## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI

### GREENVILLE DIVISION

| | |
|---|---|
| **MICHAEL ANTHONY NASH,** )<br>**JIMMY SHAW,** )<br>**VINNIE CASON,** )<br>**GRANT LEWIS, and** )<br>**CHARLESTON TAURVONTA HARRIS,** )<br>)<br>    **Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**GREGORY CARR,** )<br>)<br>    **Defendant.** )<br>) | **Civil Action**<br>**No:**   4:25-CV-059-DMB-JMV<br><br>**COMPLAINT AND JURY**<br>**DEMAND** |

### COMPLAINT

### PRELIMINARY STATEMENT

1.      This is an action for damages and declaratory relief for unpaid wages, breach of contract, and unlawful discrimination brought by five Black American farmworkers who have been systematically underpaid and denied job opportunities for years in favor of white foreign workers by their employer, Gregory Carr.

2.      While employing Plaintiffs and other Black U.S. workers as farmworkers, Gregory Carr, through his alter ego Intrepid Inc., applied to the U.S. government to hire white South African workers under a foreign agricultural worker visa program to supplement his labor force, claiming that he could not find eligible U.S. workers to take the jobs. Then, despite his promises to the U.S. government that he would treat his domestic workers at least as favorably as his foreign workers – a requirement of the foreign worker visa program – Gregory Carr paid his

white South African workers a higher wage for the same or similar work as performed by Plaintiffs and other Black U.S. workers and treated Plaintiffs as independent contractors instead of employees. Gregory Carr's failure to pay Plaintiffs and other Black U.S. workers the same wage rate and offer them the same job opportunities as his white South African workers is a violation of federal law and a breach of contract under state law that has resulted in Plaintiffs being substantially underpaid and denied job opportunities to which they were legally entitled.

3.      While employing Plaintiffs and other Black U.S. workers as farmworkers, Gegory Carr failed to comply with the Migrant and Seasonal Agricultural Worker Protection Act (AWPA) and various provisions of the Code of Federal Regulations. He did not pay Plaintiffs and his other Black U.S. workers all the wages they were owed and failed to provide them with legally required wage statements. He did not live up to the terms of the working arrangements that governed their employment as they worked alongside the white H-2A workers and required they be paid the same as those foreign workers and offered the same opportunities.  He deliberately misclassified his Black U.S. workers as independent contractors and did not make required contributions and tax payments related to their labor. In addition, he did not provide his workers with the adequate and required safety gear for the dangerous grain bin work they performed. As a result, Plaintiffs suffered both financial harm, through unpaid wages, deprivation of job opportunities, higher tax burdens, and ineligibility for unemployment compensation benefits, and significant emotional distress.

4.      In addition to violating the AWPA, Gregory Carr violated 42 U.S.C. § 1981. In his unequal treatment of his white South African H-2A workers and his Black U.S. workers, Carr discriminated against the Plaintiffs on the basis of their race and their status as United States citizens.

- 2 -

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 29 U.S.C. § 1854 (the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA")); 28 U.S.C. § 1343(a)(4) (civil rights), 42 U.S.C. §§ 1981 and 1988 (equal rights under the law); and 28 U.S.C. § 1331 (federal question).

6.     This Court has supplemental jurisdiction over the breach of contract claim arising under state law because this claim is so related to the federal claims that it forms part of the same case or controversy.

7.     Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant Carr is a resident of this district, and the cause of action arose in this district.

## PARTIES

9.     Plaintiffs Michael Anthony Nash, Jimmy Shaw, Vinnie Cason, Grant Lewis, and Charleston Taurvonta Harris are Black U.S. citizens who reside in Sunflower County, Mississippi. Each Plaintiff was employed by Gregory Carr at various points between 2018 and the present to perform labor of a seasonal or temporary nature relating to the planting, cultivation, and harvesting of crops including rice and soybeans produced for sale in interstate commerce.

10.     Gregory Carr is a natural person who is the owner and manager of a farming operation headquartered in Schlater, Mississippi in Leflore County.

11.     Gregory Carr is a single employer within the meaning of the H-2A regulations. 20 C.F.R. § 655.103(e). His enterprise is comprised of several entities, including Intrepid Inc., Craigside Farms Inc., TG Farms Inc., and NS Farms Inc. Each of these entities is an alter ego of Gregory Carr. As components of the Gregory Carr agricultural operation, Intrepid Inc., Craigside

Farms Inc., TG Farms Inc., and NS Farms Inc. are integrated and interrelated. Each of these component entities is owned, managed, and financially controlled by Gregory Carr, who oversees and controls the employees of each of the entities.

12.     While one or more Plaintiffs worked on his operations between 2018 and the present, Gregory Carr was an employer within the meaning of the H-2A regulations. 20 C.F.R. § 655.103(b). Among other things, Gregory Carr paid, supervised, and controlled the employment of both the Black U.S. farmworker Plaintiffs and the H-2A workers employed in his operations.

13.     At all times relevant to this action, Gregory Carr operated a farm based in Leflore County on which rice and soybeans were produced for sale in interstate commerce.

14.     At all times relevant to this action, Gregory Carr employed migrant or seasonal agricultural workers to perform agricultural labor on his farm's operations. Among other things, Gregory Carr hired the Black U.S. farmworkers, including Plaintiffs, and other seasonal agricultural workers, controlled their work, and paid them their wages.

## STATUTORY AND REGULATORY FRAMEWORK

15.     An employer in the United States may hire foreign workers to perform agricultural labor of a seasonal or temporary nature only if the U.S. Department of Labor ("DOL") certifies that there are insufficient available workers within the U.S. to perform the job and that the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188 (a)(1). Foreign workers admitted in this fashion are commonly referred to as "H-2A workers."

16.     Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with the DOL. 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order," or a "job order,"

- 4 -

complying with applicable regulations. This job order is used in the recruitment of both U.S. and H-2A workers and must provide to U.S. workers at a minimum the same benefits, wages, and working conditions the employer will be providing to H-2A workers. 20 C.F.R. § 655.122(a).

17.     Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer to ensure that U.S. workers are afforded a preference in hiring for the positions and that, if foreign workers are admitted, they are employed at terms that do not adversely affect U.S. workers. 20 C.F. R. § 655.0(a)(1). To avoid an adverse effect on U.S. workers, the regulations mandate that the wages and job benefits provided to the employer's H-2A workers must also be extended to similarly employed U.S. workers. 20 C.F.R. §§ 655.0(a)(3) and 655.122(a).

18.     Among the specific terms required by the H-2A regulations are the following:

a.   The employer will pay all workers performing the activities described in the petition or otherwise performed by the H-2A workers at least the applicable Adverse Effect Wage Rate ("AEWR") for every hour or portion thereof worked during a pay period, 20 C.F.R. §§ 655.120(a), 655.122(l);

b.   The employer will offer to U.S. workers no less than the same benefits, wages, and working conditions that are being provided to the H-2A workers, 20 C.F.R. § 655.122(a);

c.   The employer will keep accurate records showing for each workday the nature of the work performed, the number of hours offered and the starting and finishing time, 20 C.F.R § 655.122(j)(1);

d.   The employer will provide to each worker on or before payday a written statement listing, *inter alia*, the worker's total earnings for the pay period, the

hours of employment offered, and the employer's name, address and Federal

Employer Identification Number, 20 C.F.R. § 655.122(k); and

e.   The employer will post and maintain in a conspicuous place at the jobsite a

DOL poster setting out the rights and protections for workers under the H-2A

program, 20 C.F.R. § 655.135(l).

19.   The job order filed as a part of an H-2A application must include an attestation

from the employer that it describes the actual terms and conditions of the proffered employment

and contains all material terms and conditions of the job. 20 C.F.R. § 653.501(c)(3)(viii).

20.   Based on various criteria, including the employer's compliance with the positive

recruitment requirements set out in 20 C.F.R. § 655.153, the DOL determines whether an

employer's H-2A temporary labor certification application should be approved. 20 C.F.R. §

655.161.

21.   Once an employer receives certification from the DOL and hires H-2A workers,

in the absence of some other written employment agreement, its job order becomes the

employment contract for both the foreign workers and any U.S. workers in "corresponding

employment." 20 C.F.R. § 655.122(q). U.S. workers are engaged in corresponding employment

if they are engaged in any work described in the job order or any agricultural work actually

performed by the H-2A workers. 20 C.F.R. § 103(b).

22.   The AWPA was enacted to protect the rights of migrant and seasonal agricultural

workers in the United States. 29 U.S.C. § 1801. The AWPA requires agricultural employers to

promptly pay farmworkers the full amount of the wages due to them, including, when applicable,

wages due them under the regulations governing the H-2A worker program. The AWPA also

prohibits agricultural employers from violating without justification the working arrangements

that they enter into with farmworkers who they employ. A farmworker is entitled to have his employer live up to the promises he has made, including assurances that the job conditions will comply with federal rules relating to worker safety and to the H-2A program.

23.     42 U.S.C. § 1981 prohibits discrimination against workers on the basis of race and their status as United States citizens.

## STATEMENT OF FACTS

24.     Gregory Carr plants, grows, and harvests a variety of agricultural crops in and near Leflore County, Mississippi. Among his major crops are rice and soybeans. Before the start of each agricultural season, Gregory Carr hires workers to assist in the planting, cultivation, and harvesting of crops and to otherwise provide agricultural labor services in support of his farming activities and those of his alter egos, including Intrepid Inc., Craigside Farms Inc., TG Farms Inc., and NS Farms Inc.

25.     Plaintiffs Nash, Shaw, Cason, Lewis and Harris are among the local U.S. workers whom Gregory Carr has employed to perform a range of agricultural tasks in his farming operation.

26.     At all times relevant to this action, Plaintiffs were employees of Gregory Carr. Gregory Carr oversaw and directed the Plaintiffs' work and the manner in which they did that work and paid them their wages.

27.     At various times from 2018 to the present, Plaintiffs worked full-time on a seasonal basis for Gregory Carr from approximately March through November, depending on weather and crop growth. Plaintiffs' work was an integral part of the regular business of Gregory Carr's enterprise. Plaintiffs did not provide any of their own equipment, nor did they set their own pay rates or methods of work.

28.     Gregory Carr's enterprise was known to Plaintiffs as a single operation, which they referred to as "Greg Carr Farms" or simply "Greg Carr".

29.     Gregory Carr's agricultural operation and its component entities share physical infrastructure and equipment, with workers routinely assigned across entities, generally without being informed of which specific entity they are working for at any given time.

30.     Gregory Carr's agricultural operation and its component entities all share common management. Gregory Carr manages the business affairs of the enterprise and employs one supervisor, known to Plaintiffs as "Dooley," who supervises the day-to-day activities of workers at all the component entities.

31.     All final hiring and firing decisions across the component entities are made by Gregory Carr or by Plaintiffs' direct supervisor "Dooley" under Gregory Carr's supervision.

32.     At all times relevant to this action, Gregory Carr employed 11 or more persons in his agricultural enterprise.

33.     Beginning in 2018, Gregory Carr used his alter ego Intrepid Inc., to apply for admission of foreign H-2A guestworkers. To obtain authorization for the admission of these foreign workers, Gregory Carr has annually sought and obtained DOL certification as described in Paragraphs 15 through 21.

34.     Intrepid Inc. is an alter ego of Gregory Carr. Intrepid Inc. has been administratively dissolved as a corporation since 2019, although Gregory Carr continues to use the corporation's name to hire H-2A workers. At the time of its dissolution, its listed director and president was Gregory Carr. Intrepid Inc. does not act independently in its own interest. Gregory Carr has used his control over Intrepid Inc. to avoid his obligations to pay wages and provide job

terms to Plaintiffs Nash, Shaw, Cason, Lewis, and Harris and to other U.S. workers at least equal to those extended to the white South African H-2A workers.

35.    Throughout the period he has employed H-2A workers, Gregory Carr has annually hired C.O.C. Placement Service LLC as his representative and agent to assist the farm in recruiting, soliciting, hiring, and furnishing seasonal agricultural labor. As Gregory Carr's H-2A agent, C.O.C. Placement Service's responsibilities include preparing Gregory Carr's applications for temporary labor certification, including the job orders submitted with the H-2A applications. The job orders prepared by C.O.C. Placement Service are also used by Gregory Carr to recruit and solicit U.S. workers for the positions as part of the farm's positive recruitment requirements pursuant to 20 C.F.R. §§ 655.150 through 655.158. Gregory Carr pays C.O.C. Placement Service a fee for its services.

36.    The job requirements listed in the job orders submitted with the H-2A applications are being able to obtain a driver's license within 30 days of hire, basic English literacy and math skills, the ability to work outdoors during periods when temperatures could exceed 100 degrees Fahrenheit, and the ability to push, pull, sit, and walk for extended periods.

37.    Each of the H-2A applications submitted on Gregory Carr's behalf in the name of Intrepid Inc. included a declaration, signed under the penalties of perjury by Gregory Carr, that in employing H-2A workers, the employer would comply with several conditions, including the following:

        a.    That the employer had conducted and would continue to conduct the required recruitment procedures (including those in 20 C.F.R. § 655.153);

b. That U.S. workers would be offered and provided wages, benefits, and job conditions no less than those that the employer was offering and providing to its H-2A workers;

c. That the employer would pay at least the AEWR to H-2A workers and U.S. workers in corresponding employment;

d. That the employer's job opportunity would comply with the requirements of 20 C.F.R. § 655, Part B, including the provisions regarding recordkeeping, 20 C.F.R. § 655.122(j); wage statements, 20 C.F.R. § 655.122(k); worker employment contracts, 20 C.F.R § 655.122(q);

e. That the employer would display in a conspicuous place postings of worker rights under the H-2A program, 20 C.F.R. § 655.135(l); and

f. That the employer would comply with applicable Federal and State health and safety laws as required by 20 C.F.R. § 653.501(c)(3)(iii).

38. With respect to each of his H-2A applications seeking to hire foreign workers, Gregory Carr submitted to the DOL a written recruitment report, as required by 20 C.F.R. § 655.156. These reports were submitted on a form prepared by C.O.C. Placement Service, LLC. Each of these reports stated that Gregory Carr had contacted his former U.S. employees by phone or e-mail, that he had offered them employment at the wages and job terms described in his H-2A applications, and that none of them were available to help fill the manpower requirements of Carr's H-2A application. These statements were false; in fact, Gregory Carr failed to contact Plaintiffs and his other U.S. worker employees to recruit them for employment at the wages and job terms described in his H-2A applications.

- 10 -

39.     Based on the information contained in the H-2A applications submitted by Gregory Carr in the name of Intrepid Inc., including the declarations described in Paragraph 37, the DOL granted temporary labor certifications for employment of H-2A workers on Gregory Carr's operation for each agricultural season from 2018 through the present. Gregory Carr intended to and did employ the H-2A workers obtained as a result of these applications throughout his operation, including those operations of his alter egos, Intrepid Inc., Craigside Farms Inc., TG Farms Inc., and NS Farms Inc.

40.     From 2018 to the present, Gregory Carr has not made the same kind and degree of effort to recruit U.S. workers, including Plaintiffs, as he did to obtain foreign workers through C.O.C. Placement Service.

41.     The H-2A guestworkers Gregory Carr hired have been white citizens of the Republic of South Africa. None of the South African H-2A workers hired by Gregory Carr have been Black, despite the fact that Black individuals comprise approximately 80% of that nation's population, as compared to a white population estimated at less than 8% of the country's populace.

42.     Plaintiffs met the job requirements listed in the job orders as described in Paragraph 36.

43.     The job duties listed in the H-2A applications from 2018 to the present include driving tractors and operating farm equipment to till the soil, plant, irrigate, fertilize and harvest crops, as well as repairing and maintaining farm equipment. Starting in its 2022 application and continuing to the present, the job duties also explicitly list using hand tools in fields to maintain proper conditions for crop growth and remove weeds, cleaning and servicing equipment,

operating irrigation equipment, and assisting in the transfer and loading of the harvested crops into grain bins.

44.     The South African H-2A workers performed those job duties listed in the job orders from 2018 to the present, as well as agricultural tasks not listed in those job orders.

45.     During the periods they were employed by Gregory Carr, Plaintiffs were assigned to and performed tasks that were among those described in the H-2A applications for those years and also were assigned to and performed tasks that the H-2A workers performed that were not included in the job orders for those years.

46.     From 2018 through the present, Gregory Carr compensated his white H-2A workers at the Mississippi AEWR or higher hourly wage rates. The applicable hourly AEWRs were as follows:

|      |          |
|------|----------|
| 2018 | $ 10.73  |
| 2019 | $ 11.33  |
| 2020 | $ 11.83  |
| 2021 | $ 11.88  |
| 2022 | $ 12.45  |
| 2023 | $ 13.67  |
| 2024 | $ 14.53  |
| 2025 | $ 14.83  |

47.     For work done while employed by Gregory Carr from 2018 to the present, Plaintiffs were compensated at a rate of $10 per hour for all work performed, despite performing the same or similar work as the white South African H-2A workers.

- 12 -

48.     On most occasions, Plaintiffs were paid their wages in cash. Payroll tax deductions were not made from the Plaintiff's wages, nor were employer Social Security and Medicare contributions made on their behalf pursuant to federal law.

49.     Each year, Plaintiffs were issued 1099-NEC Forms (1099-MISC Forms before 2020), even though they were employees of Gregory Carr and were not independent contractors. The 1099 Forms were issued by one or more of Gregory Carr's alter egos, including Craigside Farms Inc., TG Farms Inc., and NS Farms Inc. Despite the fact that he was Plaintiffs' employer under the Internal Revenue Code and related tax statutes, Gregory Carr failed to pay any taxes or make required contributions with respect to Plaintiffs' earnings, even though these wages were subject to both the Federal Insurance Contributions Act, 26 U.S.C. §§ 3101-3128, 3131-3136, and the Federal Unemployment Tax Act, 26 U.S.C. §§ 3301-3311.

50.      In violation of the AWPA, 29 U.S.C. § 1831(c)(2), and its attendant regulations, 29 C.F.R. § 500.80(d), Gregory Carr failed to provide Plaintiffs on each payday with a written statement containing the data required to be disclosed under the statute and its implementing regulations. Gregory Carr also failed to provide Plaintiffs with written statements on or before each payday containing the necessary information specified and required under 20 C.F.R. § 655.122(k).

51.     At various times relevant to this case, Gregory Carr offered additional hours of employment to the white South African H-2A workers on weekends but did not offer these same employment opportunities as frequently to Plaintiffs. Plaintiffs Nash, Cason, Lewis and Harris were available and willing to perform this weekend employment. As a result, Plaintiffs Nash, Cason, Lewis and Harris were denied the opportunity to earn as much additional money for weekend work as the white South African H-2A workers.

52.     Plaintiff Nash began working for Gregory Carr in 2018.

53.     Plaintiffs Shaw, Cason and Harris began working for Gregory Carr in 2020.

54.     Plaintiff Lewis began working for Gregory Carr in 2023.

55.     In 2020, Plaintiff Nash was informed that there was no further work available for him at Gregory Carr's operations, even though he was able, willing, and qualified to continue to do the work. As a result, Mr. Nash was not offered employment by Gregory Carr for the remainder of the 2020 agricultural season or in the 2021 agricultural season, despite the fact that white South African H-2A workers were employed for those seasons. Gregory Carr allowed Nash to return to work on the farm in 2022.

56.     In 2023, Plaintiffs Nash and Harris were informed that there was no further work available for them in Gregory Carr's operations, even though they were able, willing, and qualified to do the work. As a result, Nash and Harris were not offered employment by Gregory Carr for the remainder of the 2023 agricultural season or in the 2024 or 2025 agricultural seasons, despite the fact that white South African H-2A workers were employed for those seasons.

57.     In 2024, Plaintiff Shaw was informed that there was no further work available for him at Gregory Carr's operations, even though he was able, willing, and qualified to continue to do the work. As a result, Shaw was not offered employment by Gregory Carr for the remainder of the 2024 agricultural season or in the 2025 agricultural season, despite the fact that white South African H-2A workers were employed for those seasons.

58.     At the end of the 2024 season, Plaintiff Lewis was informed that there was no further work available for him at Gregory Carr's operations, even though he was able, willing and qualified to continue to do the work. As a result, Lewis was not offered employment by

- 14 -

Gregory Carr for the 2025 agricultural season, despite the fact that white South African H-2A workers were employed for the season.

59.     Plaintiff Cason continues to be employed at Gregory Carr's operations.

60.     Plaintiff Shaw's direct supervisor, "Dooley," used the n-word several times to refer to Shaw within earshot of him, which distressed him.

61.     Among their duties while employed by Gregory Carr, Plaintiffs worked in the farm's grain bins. For all years relevant to this action, Gregory Carr failed to equip the grain bins with body harnesses with lifelines or boatswain chairs at the grain bins, as required by 29 C.F.R. § 1910.272(g)(2). Plaintiffs experienced fear and distress as a result of the lack of harnesses or boatswain chairs.

62.     At no time did Gregory Carr display in a conspicuous place at Plaintiffs' worksite a DOL poster (Form WH 1376) notifying workers of their rights under the AWPA, including the right to obtain a written statement of the terms and conditions of employment. Prior to 2025, Plaintiffs were unaware of their rights under the AWPA.

63.     At no time did Gregory Carr display in a conspicuous place at Plaintiffs' worksite a DOL poster (Form WH 1491) notifying the workers of their rights under the H-2A program. Prior to 2025, Plaintiffs were unaware of their rights under the H-2A program and its implementing regulations.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT (AWPA)
AND CODE OF FEDERAL REGULATIONS

64.     This count sets forth a claim by Plaintiffs for damages and declaratory relief with respect to Gregory Carr's violations of the AWPA and its attendant regulations during the agricultural seasons from 2018 through 2025.

- 15 -

65.     Plaintiffs were employed as seasonal agricultural workers within the meaning of the AWPA, 29 U.S.C.§ 1802(10)(A). Each of them was employed in Gregory Carr's operations in agricultural employment of a seasonal nature without being required to be absent overnight from their respective permanent places of residence in or near Sunflower County, Mississippi.

66.     Plaintiffs were engaged in corresponding employment within the meaning of the H-2A regulations, 20 C.F.R. § 655.103(b) with the H-2A workers employed on Gregory Carr's operations. While they were employed on Gregory Carr's operations from 2018 through the present, Plaintiffs were performing tasks described in the H-2A applications and job orders submitted on Gregory Carr's behalf through Intrepid Inc. and/or agricultural tasks otherwise performed by H-2A workers, as set out in Paragraphs 43 through 45.

67.     At all times relevant to this action, Gregory Carr was an "agricultural employer" within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that he operated a farm and employed seasonal agricultural workers, including Plaintiffs.

68.     Pursuant to 20 C.F.R. § 655.122(q), the H-2A applications and job orders submitted on behalf of Gregory Carr in the name of Intrepid Inc. were binding work contracts between Plaintiffs and Gregory Carr during the periods encompassed in the H-2A applications from 2018 through the present.

69.     Plaintiffs' work contracts, as embodied in the H-2A applications and job orders submitted on behalf of Gregory Carr in the name of Intrepid Inc., constituted working arrangements under the AWPA, 29 U.S.C. § 1832(c). That provision states "No farm labor contractor, agricultural employer, or agricultural association shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association with any seasonal agricultural worker".

- 16 -

70.     Plaintiffs were Gregory Carr's "employees" as defined by 26 U.S.C. § 3121(d) and § 3306(i). Gregory Carr was the person "employ[ing]" Plaintiffs as defined by 26 U.S.C. § 3121(b) and was their "employer" as defined by 26 U.S.C. § 3306(a). Working arrangements under the AWPA require payment of payroll taxes by employers that are mandated by 26 U.S.C. § 3111 and 26 U.S.C. § 3301.

71.     Contrary to the AWPA, 29 U.S.C. § 1832(c), Gregory Carr violated without justification the terms of his working arrangements with Plaintiffs, as embodied in the H-2A applications and job orders submitted on behalf of Gregory Carr through Intrepid Inc. Among other things:

a.    Gregory Carr never notified Plaintiffs in writing or otherwise of the availability at the AEWR of the positions for which H-2A workers were being hired;

b.    Gregory Carr failed to offer and provide the same wages, benefits and job opportunities to Plaintiffs as were offered and provided to his H-2A workers;

c.    Gregory Carr failed to pay Plaintiffs wages at least equal to the AEWR;

d.    Gregory Carr failed to provide written wage statements on or before each payday containing the information required under 29 C.F.R. § 655.122(k).

e.    Gregory Carr failed to display in a conspicuous place a DOL poster summarizing workers' rights under the H-2A program;

f.    Gregory Carr failed to make tax contributions and payments relating to Plaintiffs' labor as required by 26 U.S.C. § 3111 and 26 U.S.C. § 330; and

g.    Gregory Carr failed to comply with applicable health and safety regulations. Among other things, Gregory Carr failed to provide body harnesses with

- 17 -

lifelines or boatswain chairs as required by 29 C.F.R. § 1910.272(g)(2) and 20 C.F.R. § 653.501(c)(3)(iii) when Plaintiffs were entering grain bins from above.

72. The AWPA provision 29 U.S.C. § 1832(a) states "Each farm labor contractor, agricultural employer, and agricultural association which employs any seasonal agricultural worker shall pay the wages owed to such worker when due.

73. In violation of the AWPA, 29 U.S.C. § 1832(a), Gregory Carr failed to pay Plaintiffs their wages when due in multiple respects. He failed to pay the AEWR rate and he failed to pay any taxes or make required contributions with respect to Plaintiffs' earnings, despite the fact that these wages were subject to both the Federal Insurance Contributions Act and the Federal Unemployment Tax Act.

74. In violation of the AWPA, 29 U.S.C. § 1831(b), Gregory Carr failed to display in a conspicuous location a DOL poster summarizing the rights and protections under the AWPA, including the right of seasonal workers to obtain a written statement of the job terms upon request.

75. Gregory Carr's violations of the AWPA and the Code of Federal Regulations were the natural result of his conscious and deliberate acts. These violations occurred as part of his regular business practices. His violations of the AWPA were intentional within the meaning of the Act, 29 U.S.C. § 1854.

76. As a result of Gregory Carr's violations of the AWPA and the Code of Federal Regulations as set out in this count, Plaintiffs have suffered damages, including unpaid wages due them at the AEWR, unpaid wages due to failure to make required tax contributions and payments, and denial of job opportunities to which they were entitled as U.S. workers.

## SECOND CLAIM FOR RELIEF
BREACH OF CONTRACT UNDER MISSISSIPPI LAW

77.     This count sets forth a claim by Plaintiffs for damages with respect to Gregory

Carr's breach of his employment contracts with Plaintiffs, as embodied in the H-2A applications

and job orders he submitted in the name of Intrepid Inc. The First Claim for Relief explains how

this violated the AWPA and the Code of Federal Regulations.  This second claim relates to a

breach of contract under Mississippi law.

78.     In accordance with AWPA and 20 C.F.R. § 655.122(q), the H-2A applications

and job orders were the work contracts for Plaintiffs during the periods they were employed on

Gregory Carr's operations from 2018 through the present. While the existence of these contracts

is confirmed by federal law, the breach of them is also a violation of Mississippi law.

79.     Gregory Carr breached his work contracts with Plaintiffs in several respects,

including the following:

      a.   Gregory Carr failed to notify Plaintiffs in writing or otherwise of the
availability at the AEWR of the positions for which H-2A workers were hired;

      b.   Gregory Carr failed to offer and provide the same wages, benefits, and job
opportunities to Plaintiffs as were offered and provided to its H-2A workers;

      c.   Gregory Carr failed to pay Plaintiffs wages at least equal to the AEWR;

      d.   Gregory Carr failed to provide written wage statements on or before each
payday containing the information required under 29 C.F.R. § 655.122(k).

      e.   Gregory Carr failed to display in a conspicuous place a DOL poster
summarizing workers' rights under the H-2A program;

      f.   Gregory Carr failed to make tax contributions and payments relating to
Plaintiffs' labor as required by 26 U.S.C. § 3111 and 26 U.S.C. § 3301; and

g. Gregory Carr failed to comply with applicable Federal and State health and safety laws by, among other things, failing to provide Plaintiffs with body harnesses with lifelines or boatswain chairs as required by 29 C.F.R. §1910.272(g)(2) and 20 C.F.R. §653.501(c)(3) on those occasions on which they entered grain bins from above.

80. Plaintiffs did perform, and at all relevant times were ready, willing, and able to perform, but for Gregory Carr's breaches, all their obligations under their agreement.

81. Gregory Carr's breaches of his contract obligations have caused Plaintiffs economic damages.

82. Gregory Carr's breaches of his contract with Plaintiffs, despite signing the declarations described in Paragraph 37, were intentionally wrong or grossly negligent.

### THIRD CLAIM FOR RELIEF
VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866
42 U.S.C. § 1981

83. This count sets forth a claim by Plaintiffs for damages with respect to the Gregory Carr's discrimination on the basis of Plaintiffs' race and status as U.S. citizens, pursuant to 42 U.S.C. § 1981, originally enacted as part of the Civil Rights Act of 1866 and later amended by the Civil Rights Act of 1991.

84. Gregory Carr intentionally sought out white South African workers to fill its labor force and paid them at higher rates than its Black U.S. workers, including Plaintiffs. Gregory Carr gave preference in job assignments to their white foreign workers and failed to offer at least equal job opportunities to their Black workers, including Plaintiffs.

85. Through the acts detailed in the Complaint, Gregory Carr intentionally discriminated against the Plaintiffs on the basis of race and their status as U.S. citizens in their

- 20 -

employment contracts by imposing discriminatory terms of employment and by denying them the benefits, privileges, terms, and conditions of the contractual relationship.

86.     Gregory Carr's actions violated Plaintiffs' rights to make and enforce contracts and receive full and equal benefit of the law as guaranteed by 42 U.S.C. § 1981.

87.     Gregory Carr's conduct intentionally and impermissibly favored white foreign workers over Plaintiffs in the making and enforcement of employment contracts and receiving full and equal benefit of the law in violation of 42 U.S.C. § 1981.

88.     As a direct result of Gregory Carr's actions, Plaintiffs were subjected to discriminatory terms and conditions of employment and have suffered substantial damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter an order:

a.  Declaring that Defendant violated the AWPA and its attendant regulations as set out in Plaintiffs' First Claim for Relief;

b.  Granting judgment in favor of Plaintiffs and against Defendant on the claims under the AWPA set forth in Plaintiffs' First Claim for Relief, and awarding each Plaintiff his actual damages or statutory damages of $500, whichever is greater, for every violation of the AWPA set forth in that count;

c.  Granting judgment in favor of Plaintiffs and against Defendant on the breach of contract claims set forth in Plaintiffs' Second Claim for Relief and awarding each Plaintiff his actual and compensatory damages;

d.  Granting judgment in favor of Plaintiffs and against Defendant on the discrimination claims set forth in Plaintiffs' Third Claim for Relief and awarding each Plaintiff his actual and compensatory damages;

e.  Awarding Plaintiffs punitive damages with respect to the breach of contract claims set forth in Plaintiffs' Second Claim for Relief in an amount to be determined at trial;

f.  Awarding Plaintiffs punitive damages with respect to the discrimination claims set forth in Plaintiffs' Third Claim for Relief in an amount to be determined at trial;

g.  Awarding Plaintiffs their court costs, including discretionary costs;

h.  Granting Plaintiffs an award of reasonable attorney's fees;

i.  Awarding Plaintiffs pre- and post-judgment interest as allowed by law; and

j.  Awarding Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Respectfully submitted,

*/s/ Robert McDuff*_____

Robert McDuff, MS Bar No. 2532
MISSISSIPPI CENTER FOR JUSTICE
210 E. Capitol Street
Suite 1800
Jackson, MS 39201
Telephone: (601) 259-8484
Facsimile: (601) 352-4769
rmcduff@mscenterforjustice.org