UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| **MICHAEL ANTHONY NASH, ET AL.** ) | |
| ) | |
| PLAINTIFFS, ) | |
| ) | |
| v. ) | NO. 4:25-CV-59-DMB-JMV |
| ) | |
| ) | |
| **GREGORY CARR,** ) | |
| ) | |
| DEFENDANT ) | |
| ) | |
| _____ ) | |

### 28 U.S.C. § 1746 DECLARATION OF STEPHEN A. BRANDON

The undersigned, on his continuing oath as an officer of the court, declares under penalty of perjury the following:

1. My name is Stephen A. Brandon. I am counsel of record for the Defendant, Defendant Gregory Carr ("Mr. Carr") in *Nash et al. v. Carr,* civil cause no. 4:25-CV-59-DMB-JMV (N.D. Miss.) (the "matter"). I am over the age of 21 years, I am competent to testify, and the facts stated in this declaration are based on personal knowledge.

2. I was retained by Mr. Carr on May 17, 2025 to represent him in the matter.

3. I filed my entry of appearance on June 3, 2025. ECF 8.

4. I contacted Plaintiffs' counsel, Rob McDuff, on June 3, 2025, via email, to notify him of my representation of Mr. Carr in this matter, and to discuss the possibility of seeking a prompt and efficient resolution of the case by requesting a date from the magistrate judge upon which a mediation could be scheduled. Exhibit "A." In his response to my email, Mr. McDuff indicated that his co-counsel would contact me to discuss this. Exhibit "B."

5. On June 12, 2025, I received an email from Mr. McDuff. Exhibit "C." In his email, Mr. McDuff requested a very large volume of documents relating to Defendant (some or many of which may only be obtained from third parties); the specified farming entities (allegedly) operated by Defendant; and all all tax returns associated with "[a]ny other corporations affiliated with Carr's farming business in 2023 and 2024", *viz.*:

1

• Payroll records relating to Plaintiffs for calendar years 2021 through 2025. This includes records of any payments made to Plaintiffs, either as employees or as independent contractors. These documents should also include any records of hours worked by Plaintiffs during this period and any withholdings made from payments to them;

• All tax documents issued with respect to payments to Plaintiffs from 2018 through 2024, including both Forms W-2 and 1099;

• Carr's application(s) to banks and/or other financial institutions for operating loans for farming activities to be performed in 2025;

• Records reflecting wages paid, bonuses paid and hours worked by H-2A workers employed by Carr and/or Intrepid, Inc. for work performed in 2021, 2022, 2023, 2024 and/or 2025;

• Federal income tax returns for calendar years 2023 and 2024 for Carr and the following corporations incorporated at 28052 County Road 559, Schlater, MS 38952:
Craigside Farms Inc.
G S Farms Inc.
GC Farms Inc.
GL Farms Inc.
GT Farms Inc.
NS Farms Inc.
NS Farms II Inc.
MG Farms Inc.
GTC Farms Inc.
Intrepid Inc.

Any other corporations affiliated with Carr's farming business in 2023 and 2024[.]

Exhibit "C."

6.  Mr. McDuff also called me on June 12, 2025 to discuss his requests for documents. During that conversation Mr. McDuff stated that his clients would not consider mediating the case until the requested documents were produced. I once again mentioned to Mr. McDuff that Mr. Carr had recently been involved in a serious vehicle accident, and that he had undergone spinal surgery as a result of same. I explained that Mr. Carr's mobility was limited; that I wasn't sure how quickly Mr. Carr's accountant (and/or other third parties) could prepare the requested documents; and that it might take some time for me to assemble the requested documents. Mr. McDuff acknowledged this, and stated that he would agree to the entry of a protective order to protect the confidentiality of the documents. I also explained that I was in the process of moving from Jackson, Mississippi to Starkville, Mississippi; that I was no longer working in an office in Jackson; and that I was dealing with the technological issues associated with shutting down my practice in Jackson so that I could work at my new home in Starkville. I explained to him that my wife and I had lived in Jackson for more than 20 years, and that the move from Jackson to Starkville was creating challenges for me to manage the demands of my practice, along with the demands of closing my Jackson office; packing

to move the contents of my office and our house from Jackson to Starkville; unpacking our personal possessions and organizing our house in Starkville; and preparing our Jarckson house to be marketed and sold. I expressly stated that this ongoing change in my circumstances might have an impact on my ability to obtain, review, and produce the documents to him. Accordingly, I told Mr. McDuff that I might need an additional extension of time to file an answer in the matter, if we could not agree to mediate the case prior to the deadline by which an answer was due to be filed. Mr. McDuff generally addressed these concerns in his email to me of June 12, 2025, by stating: "We are happy to agree to a 30-day extension to answer. If your client cooperates regarding records and we are making progress, we will consider not opposing a further extension." Exhibit "C."

7. On June 17, 2025 I filed an unopposed motion to extend the deadline by which Defendant was due to file an answer or other responsive pleading by 30 days. ECF 9. This motion was filed to indicate the Defendant's intent to defend on the merits in this matter, as well as to obtain additional time for Defendant to make progress towards obtaining a negotiated resolution of the case by counsel via mediation.

8. On June 18, 2025, the Court entered an order extending the deadline by which Mr. Carr was due to file an answer or other responsive pleading to Plaintiff's complaint to July 17, 2025. ECF 10.

9. On June 25, 2025 and again on June 29, 2025, Mr. McDuff contacted me, via email, to ask about the status of producing the documents requested in his email of June 12, 2025. In my response to Mr. McDuff, I explained that I had taken ill since we had last spoken. Exhibit "D." I apologized for the delay in producing the documents that he requested, and I again stressed that I believed that conditions for the expedient exchange of high-quality information and a prompt resolution to this matter would be promoted if he would authorize me to contact the court and schedule a mediation with the magistrate judge. Mr. McDuff responded by saying that he would not consent to mediation or authorize another extension to file an answer until the requested documents were produced. Exhibit "E."

10. At 10:40 on the morning of July 21, 2025 – one business day after Mr. Carr's answer to Plaintiffs' complaint was due to be filed – I called Mr. McDuff to request another extension to file an answer or other responsive pleading. I heard noise in the background which suggested that Mr. McDuff was busy or otherwise occupied, so I asked him if it was a "bad time to talk." He replied that he was "in the middle of preparing a motion" that he needed to file, and he said that he would call me back shortly.

11. On July 21, 2025 at 12:23 p.m., I received an automated notice via email that Mr. McDuff's co-counsel had filed an application for default in the matter. ECF 13.

12. Mr. McDuff returned my call on July 21, 2025 at 12:30 p.m. During that call I explained to Mr. McDuff that I had received notice of the application for default since I placed my call to him earlier that morning. Mr. McDuff sounded surprised and said, "Oh, OK, I thought that they had filed that on Friday." I then explained that I called Mr. McDuff

3

earlier that morning to request a 21-day extension by which to file an answer upon Mr. Carr's behalf. I explained that I intended to cooperate with his request to produce financial documents to him, but that the ongoing activities of closing my office in Jackson; selling our house in Jackson; moving to Starkville from Jackson – along with my intervening COVID diagnosis; and other issues had been unexpectedly time-consuming and disruptive. Mr. McDuff stated that these were not his problems and that he would not agree to the request. Mr. McDuff further stated that I had "blown off" his co-counsel's requests for updates on Plaintiffs' requests for the production of financial documents, and that this justified the filing of the application for default. I told him that I had not received any emails from his co-counsel. However – while Mr. McDuff was still on the line with me – I checked my email spam filters, and I discovered that I had, in fact, received two emails from his co-counsel which had been automatically sequestered in my "junk" email folder. I explained this to Mr. McDuff, and I also subsequently sent screen shots of my "junk" email folder which confirmed my explanation. Notwithstanding, Mr. McDuff stated that he was "unapologetic" about filing the application for default and that he opposed any extension of time for Defendant to file an answer to Plaintiffs' complaint.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on this date, July 24, 2025.

_____
STEPHEN A. BRANDON

4

**EXHIBIT "A"**

From: steve@stevebrandonlaw.com <steve@stevebrandonlaw.com>
Sent: Tuesday, June 3, 2025 6:47 AM
To: rmcduff@mscenterforjustice.org
Subject: Nash et al v. Carr

Hi, Rob –

Steve Brandon here. I'm originally from Clarksdale, and a lawyer-friend of mine in nearby Sumner, Rob Tyner, asked me if I would help Greg Carr with this case.

Greg lives in Grenada. He is a sole operator who owns no farmland. He has no staff and no office. He farms solely and exclusively for the benefit of his family. And, after last year's ruinous crop season and disastrously low commodity payments, he has no money.

For my part, I have one foot planted firmly on the path towards retirement. So I'm not terribly excited about the idea of engaging in litigation at this stage. I haven't been doing this for as long as you have, but I long ago realized that litigation is, in today's world, easily the least efficient and least cost effective method of dispute resolution. It is not in the best interests of the parties to allocate their scarce resources towards a protracted adversarial dispute resolution process when other speedier, less-costly, more efficient, and more collaborative alternatives are available.

Please let me know whether your clients would agree to placing this litigation in suspension for the present, and asking Magistrate Judge Virden to engage in a mediation ASAP.

I'm free to talk any time today, tomorrow, or on Friday, if you'd like to chat.

Thank you.

Steve Brandon
Attorney at Law
Mobile: (601) 954-8599

| EXHIBIT "B" |
|:-:|

From: Robert McDuff <rbm@mcdufflaw.com>
Sent: Wednesday, June 4, 2025 1:16 PM
To: steve@stevebrandonlaw.com
Cc: 'Teresa Pulaski (SMLS)' <TPulaski@trla.org>; 'Marion Delaney (SMLS)' <MDelaney@trla.org>
Subject: RE: Nash et al v. Carr

Hi Steve,

Copied here are my co-counsel from Southern Migrant Legal Services, Tessa Pulaski and Marion Delaney.  If it's ok, they will be calling you to discuss your proposal and the best way to get to a place where we can potentially settle the case.   Thanks so much.

Rob

## EXHIBIT "C"

From: Robert McDuff <rbm@mcdufflaw.com>
Sent: Monday, June 16, 2025 7:43 AM
To: steve@stevebrandonlaw.com
Cc: 'Teresa Pulaski (SMLS)' <TPulaski@trla.org>
Subject: Nash et al v. Carr --- information sought

Dear Steve,

Thanks for taking the time to speak with me. In order to move forward with the process of resolving this issue, we need:

•   Payroll records relating to Plaintiffs for calendar years 2021 through 2025. This includes records of any payments made to Plaintiffs, either as employees or as independent contractors. These documents should also include any records of hours worked by Plaintiffs during this period and any withholdings made from payments to them;

•   All tax documents issued with respect to payments to Plaintiffs from 2018 through 2024, including both Forms W-2 and 1099;

•   Carr's application(s) to banks and/or other financial institutions for operating loans for farming activities to be performed in 2025;

•   Records reflecting wages paid, bonuses paid and hours worked by H-2A workers employed by Carr and/or Intrepid, Inc. for work performed in 2021, 2022, 2023, 2024 and/or 2025;

•   Federal income tax returns for calendar years 2023 and 2024 for Carr and the following corporations incorporated at 28052 County Road 559, Schlater, MS 38952:
Craigside Farms Inc.
G S Farms Inc.
GC Farms Inc.
GL Farms Inc.
GT Farms Inc.
NS Farms Inc.
NS Farms II Inc.
MG Farms Inc.
GTC Farms Inc.
Intrepid Inc.
Any other corporations affiliated with Carr's farming business in 2023 and 2024

We are happy to agree to a 30-day extension to answer. If your client cooperates regarding records and we are making progress, we will consider not opposing a further extension.

Best wishes,
Rob

7

**EXHIBIT "D"**

From: steve@stevebrandonlaw.com
Sent: Sunday, June 29, 2025 11:35 AM
To: Robert McDuff <rbm@mcdufflaw.com>
Cc: Teresa Pulaski <TPulaski@trla.org>
Subject: RE: Carr Farms

Rob, I apologize. I have been MIA for a little more than a week because I have been sharing my GI tract with a hyperactive stomach bug. (I honestly thought that I had contracted the Ebola virus, but the doctor disagreed with me. And I didn't go to medical school, so I took her word for it.) So I had to step off of the escalator for a few days and I only started to play catch-up this morning. I'll get back to you tomorrow and let you know how things are progressing.

It's been my experience that a scheduled mediation creates a forcing function for the parties to prepare, in good faith, for a settlement conference, lest they run the risk of wasting a U.S. magistrate judge's time and being scolded for same. I don't have any problem with producing core information to you that will help you and your clients to make an informed decision as to settlement. But in the absence of an agreement from your side to allow me to contact U.S. Magistrate Judge Virden, and for me to obtain potential mediation dates from her, then the inclination for both sides to mediate lacks symmetry. I don't see the harm in contacting her and getting dates, and -- if you'll trust me just a little bit -- I think that you'll develop a high degree of confidence, in a short period of time, that the decision to mediate this case will produce a much more economically efficient outcome for you and for your clients than protracted litigation.

My client has already authorized me to mediate. I'll also arrange for his accountant to attend the mediation, so that questions about my client's financial situation can be addressed in real-time.

Steve Brandon
(601) 954-8599

**EXHIBIT "E"**

From: Robert McDuff <rbm@mcdufflaw.com>
Sent: Sunday, June 29, 2025 12:26 PM
To: steve@stevebrandonlaw.com
Cc: Teresa Pulaski <TPulaski@trla.org>
Subject: Re: Carr Farms

Thanks Steve.  Best wishes on your recovery.  We need some documents from your client and the accountant before we get a mediation date or agree to another extension to answer.   Thank you. Rob