IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**MICHAEL ANTHONY NASH,** )
**JIMMY SHAW, VINNIE CASON,** )
**GRANT LEWIS,** and **CHARLESTON** )
**TAURVONTA HARRIS,** )
 )
    PLAINTIFFS, )
 ) CIVIL CAUSE NO.
*vs.* ) 4:25-CV-059-DMB-JMV
 )
**GREGORY CARR,** )
 )
    DEFENDANT. )
 )

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO SET ASIDE ENTRY OF DEFAULT

Defendant **GREGORY CARR** respectfully submits this memorandum of law in support of his motion to set aside the default entered herein by the Clerk of Court on July 23, 2025 (ECF 14).

### I. FACTS

1.  The five Plaintiffs filed their 22-page, 88-paragraph complaint against Defendant, the sole-operator of a family farming business, on May 15, 2025. ECF 1. The complaint is replete with detailed allegations of violations of federal laws, *viz.*, the Migrant and Seasonal Agricultural Worker Protection Act (AWPA) and the Civil Rights Act of 1866 (42 U.S.C. § 1981), and violations of Mississippi law (breach of contract). The factual allegations contain multiple references to the code of federal regulations, interactions between the parties, interactions between Defendant and third parties, along with various fact assertions against Defendant which are soley attributable to Plaintiffs. ECF 1.

2. Undersigned counsel filed his entry of appearance herein on June 3, 2025. ECF 8. On that same date, undersigned counsel contacted Plaintiffs' counsel, Rob McDuff, via email, to notify him of undersigned counsel's representation of Mr. Carr in this matter, and to discuss the possibility of seeking a prompt and efficient resolution of the case by requesting a date from the magistrate judge upon which a mediation could be scheduled. ECF 15, Ex. "A," pp. 1, 5. In his response to my email, Mr. McDuff indicated that his co-counsel would contact me to discuss this. ECF 15, Ex. "A," p. 6.

3. On June 12, 2025, undersigned counsel received an email from Mr. McDuff. ECF 15, Ex. "A," p. 6. In his email, Mr. McDuff requested a long and specific list of documents relating to Defendant's business dealings in 2023 and 2024 (some or many of which may only be obtained from third parties); the specified farming entities (allegedly) operated by Defendant; and all all tax returns associated with "[a]ny other corporations affiliated with Carr's farming business in 2023 and 2024." ECF 15, Ex. "A," p. 7.

4. Mr. McDuff also called undersigned counsel on June 12, 2025 to discuss his requests for documents. During that conversation Mr. McDuff stated that his clients would not consider mediating the case until the requested documents were produced. Undersigned counsel once again mentioned to Mr. McDuff that Mr. Carr had recently been involved in a serious vehicle accident, and that he had undergone spinal surgery as a result of same. Undersigned counsel explained that Mr. Carr's mobility was limited; that undersigned counsel wasn't sure how quickly Mr. Carr's accountant (and/or other third parties) could prepare the requested documents; and that it might take some time for undersigned counsel to assemble the requested documents. Mr. McDuff acknowledged this, and stated that he would agree to the entry of a protective order to protect the

confidentiality of the documents. Undersigned counsel also explained that he was in the process of moving from Jackson, Mississippi to Starkville, Mississippi; that undersigned counsel was no longer working in an office in Jackson; and that undersigned counsel was dealing with the technological issues associated with shutting down his practice in Jackson so that he could work at his new home, in Starkville. Undersigned counsel explained to Mr. McDuff that Defendant's counsel's wife and undersigned counsel had lived in Jackson for more than 20 years, and that the move from Jackson to Starkville was creating challenges for me to manage the demands of undersigned counsel's practice, along with the demands of closing his Jackson office; packing to move the contents of his office and his home from Jackson to Starkville; unpacking his personal possessions and organizing his house in Starkville; and preparing his Jackson house to be marketed and sold. Defendant's counsel expressly stated that this ongoing change in his circumstances might have an impact on his ability to obtain, review, and produce the documents to him. Accordingly, Defendant's counsel told Mr. McDuff that he may need an additional extension of time to file an answer in the matter, if counsel for the parties could not agree to mediate the case prior to the deadline by which an answer was due to be filed. Mr. McDuff generally addressed these concerns in his email to Defendant's counsel of June 12, 2025, by stating: "We are happy to agree to a 30-day extension to answer. If your client cooperates regarding records and we are making progress, we will consider not opposing a further extension." ECF 15, Ex. "A," p. 7.

5. On June 17, 2025 undersigned counsel filed an unopposed motion to extend the deadline by which Defendant was due to file an answer or other responsive pleading by 30 days. ECF 9.

6. On June 18, 2025, the Court entered an order extending the deadline by which Defendant was due to file an answer or other responsive pleading to Plaintiff's complaint to July 17, 2025. ECF 10.

7. On June 25, 2025 and again on June 29, 2025, Mr. McDuff contacted undersigned counsel, via email, to ask about the status of producing the documents requested in his email of June 12, 2025. In Defendant's counsel's response to Mr. McDuff, undersigned counsel explained that he had taken ill since they had last spoken. ECF 15, Ex. "A," p. 8. Exhibit "D." Defendant's counsel apologized for the delay in producing the documents that Plaintiffs' counsel had requested, and undersigned counsel again stressed that he believed that conditions for the expedient exchange of high-quality information and a prompt resolution to this matter would be promoted if Mr. McDuff would authorize undersigned counsel to contact the court and schedule a mediation with the magistrate judge. Mr. McDuff responded by saying that he would not consent to mediation or authorize another extension to file an answer until the requested documents were produced. ECF 15, Ex. "A," p. 9.

8. At 10:40 on the morning of July 21, 2025 – one business day after Defendant's answer to Plaintiffs' complaint was due to be filed – Defendant's counsel called Mr. McDuff to request another extension to file an answer or other responsive pleading. Undersigned counsel heard noise in the background which suggested that Mr. McDuff was busy or otherwise occupied, so Defendant's counsel inquired of Mr. McDuff if it was a "bad time to talk." Mr. McDuff replied that he was "in the middle of preparing a motion" that he needed to file, and he said that he would call me back shortly. ECF 15, Ex. "A," pp. 3-4.

9. Less than two hours later, at 12:23 p.m., Defendant's counsel received an automated notice via email that Mr. McDuff's co-counsel had filed an application for default in the matter (again, only one business day after the deadline by which Defendant's answer was due to be filed). ECF 15, Ex. "A," p. 4; ECF 13.

10. Mr. McDuff returned Defendant's counsel's call on July 21, 2025 at 12:30 p.m. ECF 15, Ex. "A," p. 4. During that call undersigned counsel explained to Mr. McDuff that Defendant's counsel had received notice of the application for default since he placed his call to him earlier that morning. Mr. McDuff sounded surprised and said, "Oh, OK, I thought that they had filed that on Friday." Undersigned counsel then explained that he had called Mr. McDuff earlier that morning to request a 21-day extension by which to file an answer upon Defendant's behalf. Defendant's counsel explained that he intended to cooperate with his request to produce financial documents to him, but that the ongoing activities of closing his office in Jackson; selling his home in Jackson; moving to Starkville from Jackson – along with an intervening COVID diagnosis; and other issues had been unexpectedly time-consuming and disruptive. Mr. McDuff stated that he would not agree to the request. ECF 15, Ex. "A," p. 4.

11. In support of their application for default, Plaintiffs stated, *inter alia*, that Defendant was due to file his answer or other responsive pleading to Plaintiff's by July 17, 2025, and that "entry of default is appropriate at this time" against Plaintiff because Defendant "has yet to file a responsive pleading." ECF 13.

## II. LAW

12. Defaults are disfavored by the Court. *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F. 2d 274, 276 (5th Cir. 1989). As this Court recently

held, in *Toy v. Jones*, 2025 U.S. Dist. LEXIS 104051 (N.D. Miss. June 2, 2025; Aycock, S.),

> Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause[.]" In determining whether to set aside an entered default, the court considers (1) whether the default was willful, (2) whether setting it aside would prejudice the adversary, and (3) whether a meritorious defense is presented. *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985) (citing Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)). Although a motion to set aside an entry of default under Rule 55(c) is somewhat analogous to a motion to set aside a default judgment under Rule 60(b), the standard for setting aside an entry of default is less rigorous than setting aside a judgment for excusable neglect. *Id.* (citing *Meehan*, 652 F.2d at 276). "[M]odern federal procedure favors trials on the merits[.]" *Id.* (citation omitted).

*Toy* at *11-*12. The *Toy* Court set aside the clerk's default because the party's failure to respond to the complaint was not wilful; Plaintiff would not be "prejudiced by delay […] given that [the movant's] motion to set aside the entry of default was filed only four days after the entry of default; and the movant asserted that it had a meritorious defense. The Court noted that setting aside the entered default would not prejudice Toy because "the case is still in its early stages and [the movant] moved to set aside the default quickly after it was entered. The Court also emphasized that "[d]efault judgments are a drastic remedy, not favored by the Federal Rules[.]" *Toy, id.*, citing *Sun Bank* at 874 F. 2d 276.

      13. These standards for reviewing motions to set aside entries of default were also expressly ratified by this Court in *Cont'l Western Ins. Co. v. Concept Agri-Tek, LLC*, 2020 U.S. Dist. LEXIS 188777 (N.D. Miss. October 13, 2020; Brown, D.):

> Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause." "The language of this rule is discretionary, and the decision to set aside a default is committed to the sound discretion of the trial court." *Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 698 (5th Cir. 2015) (internal quotation marks omitted). "To

decide if good cause exists, courts consider three non-exclusive factors: whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Koerner v. CMR Constr. & Roofing, L.L.C.,* 910 F.3d 221, 225 (5th Cir. 2018) (internal quotation marks omitted). A court may also consider whether "the defendant acted expeditiously to correct the default." *In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992). "Defaults are not favored and their strict enforcement has no place in the Federal Rules." *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003) (internal quotation marks omitted).

*Cont'l Western Ins. Co.* at *2-*3.

### III. ARGUMENT

Defendant's counsel addresses the inquiry to be made by the Court when exercising its discretion to set aside an entry of default:

14. **Willfulness.** "A willful default is an `intentional failure' to respond to litigation." *In re OCA, Inc.*, 551 F.3d 359, 370 n.32 (5th Cir. 2008). "A finding of willful default ends the inquiry, for when the court finds an intentional failure of responsive pleadings there need be no other finding." *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 225 (5th Cir. 2018) (internal quotation marks omitted)." *In re Dierschke*, 975 F.2d 181, 184-185 (5th Cir. 1992) ("Willful failure alone may constitute sufficient cause for the court to deny [the defendant's] motion.").

In support of their application for default, Plaintiffs stated, *inter alia*, that "entry of default is appropriate at this time" against Plaintiff because Defendant "has yet to file a responsive pleading." ECF 13. But that is not the standard for determining whether default should be entered under the jurisprudence of the Fifth Circuit. Moreover, Defendant did not intentionally fail to respond to litigation. To the contrary, Defendant's counsel filed a notice of appearance, engaged in communications with Plaintiff's counsel

by email and phone, and filed an unopposed motion for extension of time, which the Court granted. Defendant clearly responded to the litigation and made efforts to create conditions for a prompt resolution of the claims through early mediation. A willful failure to respond to litigation simply is not implicated or supported by the facts. Moreover, Defendant's intent to defend on the merits was manifested by the filing of an unopposed motion for an extension of time to file an answer or other responsive pleading. (The clue to the movant's intentions are cleverly hidden, in plain sight, in the document's title: "Defendant's Unopposed Motion for Additional Time *to File Answer or Other Responsive Pleading To Plaintiffs' Complaint*," ECF 9.[1]) This action, conjoined with the filing of

---

[1] While the Mississippi Supreme Court case *Holmes v. Holmes*, 628 So. 2d 1361, 1364-65 (Miss. 1993) is not binding upon this Court, that court's observations are squarely applicable to the instant matter.

In *Holmes,* the husband filed a complaint seeking a divorce from his wife. After a hearing of which the wife had no notice, the chancellor entered judgment in favor of the husband due to the wife's failure to answer the complaint within 30 days. The wife filed a motion to set aside the judgment pursuant to Rule 55(b), which was denied by the chancery court. The wife appealed.

In her appeal, the wife noted that her counsel had contacted counsel for the husband within 30 days after receiving the complaint and advised counsel for the husband of his representation of the wife and of his wish to settle the case. The Supreme Court of Mississippi held that the wife had made an appearance by any standard and that she was therefore entitled to notice and to be heard on any motion to assess damages on remand.

With regard to the conduct of the defense counsel, the appellate court in *Holmes* observed:

> In the case at bar, Mrs. Holmes promptly contacted an attorney. Her attorney wrote her husband's attorney and informed him that Mrs. Holmes was represented by counsel and that she wished to settle the case if possible; however, he made clear Mrs. Holmes' intent to defend the suit should no settlement be reached. With knowledge of this letter, Mr. Holmes' attorney nevertheless proceeded to secure a divorce by default against Mrs. Holmes. In this regard, his conduct suggests gamesmanship. In the Comment to M.R.C.P. 1, it is stated that 'properly utilized, the rules will tend to discourage battles over mere form and to sweep away needless procedural controversies that either delay a trial on the merits or deny a party his day in court because of technical deficiencies.' Conversely, improper utilization of the rules invariably results in the type of gamesmanship and ambush techniques, employed in the case at bar, that the rules were designed to abolish. We refuse to condone such behavior and therefore reverse the judgment

Defendant's counsel's notice of appearance and of his communications with Plaintiffs' counsel, constitutes facially valid proof of Defendant's intent to defend. Defendant submits that under the facts, the first factor weighs in favor of setting aside the default.

15. **Prejudice.** "There is no prejudice to the plaintiff where the setting aside of the default has done no harm to [the] plaintiff except to require it to prove its case …. All that has been done is to give the defendants their day in court." *Continental Western Insurance Company*, *id.*, quoting *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000). Defendant submits that Plaintiffs will not be prejudiced by setting aside the clerk's entry of default. Plaintiffs will be required to prove their claims *just as they expected that they would be required to do when they filed their complaint*. This case is still in the pleadings

---

of the chancellor and remand for proceedings consistent with the opinion rendered in this cause.

*Holmes* at 1364-65.

The similarities are striking. Plaintiff's counsel may superficially complain that Defendant's counsel failed to produce documents which may have led to the conditions for a mediation, but this, by itself and when considered within the context of the totality of the circumstances, does not justify their effort to deny Defendant his day in court by filing an application for default.

In the instant matter, Plaintiffs' counsel *knew* that Mr. Carr was represented by counsel; they *knew* that Mr. Carr had expressed an interest in settling this case, and that his counsel had gone so far as to ask for authorization to contact the magistrate judge and to inquire of available dates upon which to schedule a mediation; and Plaintiffs' counsel *knew*, by virtue of the filing of Defendant's notice of appearance and unopposed motion for additional time *to file an answer or other responsive pleading*, of Defendant's intention to defend on the merits. (By definition, the relief sought by Defendant's motion, *viz.*, for additional time within which to "file an answer or other responsive pleading," signaled Defendant's intention to defend upon the merits.) Notwithstanding, Plaintiffs' counsel filed Plaintiff's application for entry of default within less than one business day after the passing of the extended filing deadline, and within only two hours *after* Defendant's counsel personally contacted Defendant's Mississippi counsel to discuss the case and to request a second extension of time to file an answer. When Defendant's counsel brought this to the attention of Plaintiffs' Mississippi counsel, he simply replied that he was "unapologetic" for Plaintiffs' tactics – thereby signaling that Plaintiffs' counsel were, in fact, indifferent to Mr. Carr's substantive and due process rights, and that Plaintiff's Mississippi and out-of-state counsel were more eager to obtain an advantage over Mr. Carr by engaging in "gamesmanship and ambush techniques" than they were in prosecuting their clients' claims upon their merits. Again, Plaintiffs' counsel's perceived and actual faults with Defendants' counsel did not, in the circumstances, support the filing of their application for default against Mr. Carr.

STEPHEN A. BRANDON
ATTORNEY AT LAW
1300 U.S. HIGHWAY 51 NORTH
MADISON, MISSISSIPPI 39110
(601) 954-8599

phase. A case management conference has not been set. Pre-discovery disclosures are not yet due. The litigation is in its infancy and vacating the entry of default will not be detrimental to Plaintiffs. Defendant submits that the second factor weighs in favor of setting aside the default.

16. **Existence of Meritorious Defense.** Defendant has meritorious defenses to the claims asserted by Plaintiffs:

A. Plaintiff's complaint fails to state a claim for relief under 42 U.S.C. § 1981 because Plaintiffs' pleading is not compliant with *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (U.S. 2020).

B. Regarding the alleged violations of the AWPA, Defendant's farming operations fall within the scope of the AWPA's family business exemption to the AWPA. 29 U.S.C. § 1803(a)(1) (providing that any "individual who engages in a farm labor contracting activity on behalf of a farm […] which is owned or operated exclusively by such individual or an immediate family member of such individual, if such activities are performed only for such operation and exclusively by such individual or an immediate family member, but without regard to whether such individual has incorporated or otherwise organized for business purposes" is exempt from coverage under the AWPA); *see also Malacara v. Garber*, 353 F.3d 393 (5th Cir. 2003) ("This appeal requires this court to examine the family business exemption from the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 et seq. Appellants, two Texas-based migrant farmworkers, alleged that appellee, the owner of a family farm, deliberately discouraged them from accepting employment so he could import workers under a program that requires farmers first to attempt to hire American workers before

receiving visas for foreign workers. Appellants alleged that appellee's conduct violated the AWPA and that his misrepresentations of the terms and conditions of employment at his farm constituted fraud under Texas law. The district court granted appellee's motion for summary judgment, dismissing the AWPA claim based on the family business exemption from the statute and dismissing the state law fraud claim based on a failure to raise a fact issue as to injury. We affirm the district court's grant of summary judgment").

**C.** Plaintiffs have failed to state a claim on which relief can be granted in relation to their state law breach of contract claim, because they have not properly pleaded their alleged injuries and damages under Fed.R.Civ.P. 9(g).

**D.** Defendant submits that his meritorious defenses weigh in favor of setting aside the default because the defenses, if accepted by a fact-finder, would produce a result different than the default sought by Plaintiffs. *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 122 (5th Cir. 2008).

17. The clerk's entry of default was entered on July 23, 2025. Defendant filed his motion to set aside clerk's entry of default one day later, on July 24, 2025. Defendant submits that the expeditiousness factor weighs in favor of setting aside the entry of default.

18. Defendant submits that all of the *Koerner* and *Dierschke* factors weigh in favor of setting aside the entry of default.

## IV. CONCLUSION

For the reasons set forth herein, and in Defendant's motion to set aside entry of default and its accompanying declaration, Defendant respectfully urges that, in the circumstances, it is appropriate to set aside the entry of default.

RESPECTFULLY SUBMITTED ON THIS DATE: July 24, 2025.

/s/ Steve Brandon
Stephen A. Brandon (MB #8655)
**COUNSEL FOR GREGORY CARR**

**OF COUNSEL:**

Stephen A. Brandon
Attorney at Law
1300 U.S. Highway 51 North
Madison, Mississippi 39110
(601) 954-8599
Facsimile: (601) 853-2878

**CERTIFICATE OF SERVICE**

I, STEPHEN A. BRANDON, hereby certify that I have this day served upon all counsel of record a copy of the foregoing document, consistent with the Federal Rules of Civil Procedure and ECF filing and service practices and procedures, to wit:

Robert B. McDuff, Esq.
767 North Congress Street
Jackson, Mississippi  39202
*rbm@mcdufflaw.com*

Marion Lourdes Delaney, Esq.
Texas RioGrande Legal Aid, Inc.
311 Plus Park Blv Ste #135
Nashville, Tennessee  37203
*mdelaney@trla.org*

Teresa Pulaski, Esq.
Southern Migrant Legal Services
604 Russell St. Ste Apt 104
Nashville, Tennessee  37206
*teresa.c.pulaski@gmail.com*

DONE ON THIS DATE:  July 24, 2025.

/s/ Steve Brandon
Stephen A. Brandon