UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

GREENVILLE DIVISION

| | | |
|---|---|---|
| **MICHAEL ANTHONY NASH, JIMMY SHAW, VINNIE CASON, GRANT LEWIS AND CHARLESTON TAURVONTA HARRIS,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | Civil Action No: 4:25-CV-059-DMB-JMV |
| **v.** | ) ) ) | |
| **Gregory Carr.,** | ) ) | Judge Virden |
| **Defendant.** | ) ) | |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff, by and through undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local Uniform Civil Rule 7(b)(2) for leave to file a Second Amended Complaint. In support of this motion, Plaintiff states as follows:

- Plaintiff filed the original Complaint on May 15, 2025 and a First Amended Complaint on September 4, 2025.

- Since that time, Defendant has served his initial disclosures, which identified additional information about individuals and entities believed to have participated in the conduct alleged in this action.

- Based on this newly disclosed information, Plaintiff seeks leave to amend the pleadings to:

- o Identify the names of other individuals in Defendant's employ whose legal names were first revealed in Defendant's initial disclosures;

- o Clarify and expand upon certain factual allegations consistent with that information;

- o Update the claims accordingly; and

- o Incorporate a RICO Case Statement in accordance with the requirements of Local Uniform Civil Rule 83.8(b).

- Under Rule 15(a)(2), leave to amend "shall be freely given when justice so requires." Granting leave here will promote the interests of justice and judicial efficiency by ensuring that all relevant parties and facts are before the Court.

- The proposed amendment is not sought for purposes of delay or bad faith, will not prejudice Defendant, and is not futile.

- A copy of the Proposed Second Amended Complaint is attached hereto as Exhibit A.

- A copy of the RICO Statement is attached hereto as Exhibit B.

Pursuant to Local Uniform Civil Rule 7(b)(10), Plaintiffs' counsel has conferred with Defendant's counsel regarding the relief sought herein. Defendant's counsel has indicated that Defendant opposes the relief sought in this motion.

WHEREFORE, Plaintiff respectfully requests that the Court grant this Motion and enter an order permitting the filing of the attached Second Amended Complaint.

Respectfully submitted,

*/s/ Robert McDuff*
Robert McDuff, MS Bar No.  2532
MISSISSIPPI CENTER FOR JUSTICE
210 E. Capitol Street

Suite 1800
Jackson, MS 39201
Telephone: (601) 259-8484
Facsimile: (601) 352-4769
rmcduff@mscenterforjustice.org

Marion Lourdes Delaney, TN Bar No. 042643
*Admitted pro hac vice*
Teresa Pulaski, TN Bar No. 041365
*Admitted pro hac vice*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: 830-267-9320
mdelaney@trla.org
tpulaski@trla.org

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI

### GREENVILLE DIVISION

| | | |
|---|---|---|
| **MICHAEL ANTHONY NASH,** | ) | |
| **JIMMY SHAW,** | ) | |
| **VINNIE CASON,** | ) | **Civil Action** |
| **GRANT LEWIS, and** | ) | **No. 4:25-CV-059-DMB-JV** |
| **CHARLESTON TAURVONTA HARRIS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **AMENDED COMPLAINT** |
| | ) | **AND JURY DEMAND** |
| **v.** | ) | |
| | ) | |
| **GREGORY CARR,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PROPOSED SECOND AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1.      This is an action for damages, declaratory relief, and injunctive relief for unpaid

wages, breach of contract, and unlawful discrimination brought by five Black American

farmworkers who have been systematically underpaid and denied job opportunities for years in

favor of white foreign workers by their employer, Gregory Carr.

2.      While employing Plaintiffs and other Black U.S. workers as farmworkers,

Gregory Carr, through his alter ego Intrepid Inc., applied to the U.S. government to hire white

South African workers under a foreign agricultural worker visa program to supplement his labor

force, claiming that he could not find eligible U.S. workers to take the jobs. Then, despite his

promises to the U.S. government that he would treat his domestic workers at least as favorably as

his foreign workers – a requirement of the foreign worker visa program – Gregory Carr paid his

white South African workers a higher wage for the same or similar work as performed by Plaintiffs and other Black U.S. workers and treated Plaintiffs as independent contractors instead of employees. Gregory Carr's failure to pay Plaintiffs and other Black U.S. workers the same wage rate and offer them the same job opportunities as his white South African workers is a violation of federal law and a breach of contract under state law that has resulted in Plaintiffs being substantially underpaid and denied job opportunities to which they were legally entitled.

3.      While employing Plaintiffs and other Black U.S. workers as farmworkers, Gegory Carr failed to comply with the Migrant and Seasonal Agricultural Worker Protection Act (AWPA) and its implementing regulations. He violated his working arrangement with Plaintiffs and his other Black U.S. workers by not paying them all the wages they were owed, denying them job opportunities to which they were entitled, causing them to be transported in improperly insured vehicles and failing to provide them with legally required wage statements. He deliberately misclassified his Black U.S. workers as independent contractors and did not make required contributions and tax payments related to their labor. In addition, he did not provide his workers with adequate and required safety gear for the dangerous grain bin work they performed. As a result, Plaintiffs suffered both financial harm and significant emotional distress. In addition to damages and declaratory relief, Plaintiffs seek injunctive relief because Gregory Carr continues to violate these provisions of law.

4.      Gregory Carr's various false statements in his H-2A applications throughout the years constituted a pattern of racketeering activity that has deprived Plaintiffs of job opportunities and wages in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

5.      In addition to these violations, Gregory Carr violated 42 U.S.C. § 1981. In his unequal treatment of his white South African H-2A workers and his Black U.S. workers, Carr discriminated against Plaintiffs on the basis of their race and their status as United States citizens.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 29 U.S.C. § 1854 (the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA")); 28 U.S.C. § 1343(a)(4) (civil rights), 42 U.S.C. §§ 1981 and 1988 (equal rights under the law); 18 U.S.C. § 1964(c) (Racketeer Influenced and Corrupt Organizations Act ("RICO") and 28 U.S.C. § 1331 (federal question).

7.      This Court has supplemental jurisdiction over the breach of contract claims arising under state law because these claims are so related to the federal claims that they form part of the same case or controversy.

8.      Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant Carr is a resident of this district, and the cause of action arose in this district.

## PARTIES

10.      Plaintiffs Michael Anthony Nash, Jimmy Shaw, Vinnie Cason, Grant Lewis, and Charleston Taurvonta Harris are Black U.S. citizens who reside in Sunflower County, Mississippi. Each Plaintiff was employed by Gregory Carr at various points between 2018 and the present to perform labor of a seasonal or temporary nature relating to the planting, cultivation, and harvesting of crops, including rice and soybeans, produced for sale in interstate commerce.

11.      Gregory Carr is a natural person who is the owner and manager of a farming operation headquartered in Schlater, Mississippi in Leflore County.

- 3 -

12.    Gregory Carr is a single employer within the meaning of the H-2A regulations. 20 C.F.R. § 655.103(e). His enterprise is comprised of several entities, including Intrepid Inc., Craigside Farms Inc., TG Farms Inc., and NS Farms Inc. Each of these entities is an alter ego of Gregory Carr. As components of the Gregory Carr agricultural operation, Intrepid Inc., Craigside Farms Inc., TG Farms Inc., and NS Farms Inc. are integrated and interrelated. Each of these component entities is owned, managed, and financially controlled by Gregory Carr, who oversees and controls the employees of each of the entities.

13.    While one or more Plaintiffs worked on his operations between 2018 and the present, Gregory Carr was an employer within the meaning of the H-2A regulations. 20 C.F.R. § 655.103(b). Among other things, Gregory Carr paid, supervised, and controlled the employment of both the Black U.S. farmworker Plaintiffs and the H-2A workers employed in his operations.

14.    At all times relevant to this action, Gregory Carr operated a farm based in Leflore County on which rice and soybeans were produced for sale in interstate commerce.

15.    At all times relevant to this action, Gregory Carr employed migrant or seasonal agricultural workers to perform agricultural labor on his farm's operations. Among other things, Gregory Carr hired Black U.S. farmworkers, including Plaintiffs, and other seasonal agricultural workers, controlled their work, and paid them their wages.

## STATUTORY AND REGULATORY FRAMEWORK

16.    An employer in the United States may hire foreign workers to perform agricultural labor of a seasonal or temporary nature only if the U.S. Department of Labor ("DOL") certifies that there are insufficient available workers within the U.S. to perform the job and that the employment of foreign workers will not adversely affect the wages and working

conditions of similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188 (a)(1).

Foreign workers admitted in this fashion are commonly referred to as "H-2A workers."

17.     Agricultural employers seeking the admission of H-2A workers must first file a

temporary labor certification application with the DOL. 20 C.F.R. § 655.130. This application

must include a job offer, commonly referred to as a "clearance order," or a "job order,"

complying with applicable regulations. This job order is used in the recruitment of both U.S. and

H-2A workers and must provide to U.S. workers at a minimum the same benefits, wages, and

working conditions the employer will be providing to H-2A workers. 20 C.F.R. § 655.122(a).

18.     Federal regulations establish the minimum benefits, wages, and working

conditions that must be offered by the petitioning employer to ensure that U.S. workers are

afforded a preference in hiring for the positions and that, if foreign workers are admitted, they

are employed at terms that do not adversely affect U.S. workers. 20 C.F. R. § 655.0(a)(1). To

avoid an adverse effect on U.S. workers, the regulations mandate that the wages and job benefits

provided to the employer's H-2A workers must also be extended to similarly employed U.S.

workers. 20 C.F.R. §§ 655.0(a)(3) and 655.122(a).

19.     Among the specific terms required by the H-2A regulations are the following:

    a.  The employer will pay all workers performing the activities described in the
petition or otherwise performed by the H-2A workers at least the applicable
Adverse Effect Wage Rate ("AEWR") for every hour or portion thereof
worked during a pay period, 20 C.F.R. §§ 655.120(a), 655.122(l);

    b.  The employer will offer to U.S. workers no less than the same benefits,
wages, and working conditions that are being provided to the H-2A workers,
20 C.F.R. § 655.122(a);

- 5 -

    c.    The employer will keep accurate records showing for each workday the nature of the work performed, the number of hours offered and the starting and finishing time, 20 C.F.R. § 655.122(j)(1);

    d.    The employer will provide to each worker on or before payday a written statement listing, *inter alia*, the worker's total earnings for the pay period, the hours of employment offered, and the employer's name, address and Federal Employer Identification Number, 20 C.F.R. § 655.122(k); and

    e.    The employer will post and maintain in a conspicuous place at the jobsite a DOL poster setting out the rights and protections for workers under the H-2A program, 20 C.F.R. § 655.135(l).

20.    The job order filed as a part of an H-2A application must include an attestation from the employer that it describes the actual terms and conditions of the proffered employment and contains all material terms and conditions of the job. 20 C.F.R. § 653.501(c)(3)(viii).

21.    Based on various criteria, including the employer's compliance with the positive recruitment requirements set out in 20 C.F.R. § 655.153, the DOL determines whether an employer's H-2A temporary labor certification application should be approved. 20 C.F.R. § 655.161.

22.    Once an employer receives certification from the DOL and hires H-2A workers, in the absence of some other written employment agreement, its job order becomes the employment contract for both the foreign workers and any U.S. workers in "corresponding employment." 20 C.F.R. § 655.122(q). U.S. workers are engaged in corresponding employment if they are engaged in any work described in the job order or any agricultural work actually performed by the H-2A workers. 20 C.F.R. § 103(b).

- 6 -

23. The AWPA was enacted to protect the rights of migrant and seasonal agricultural workers in the United States. 29 U.S.C. § 1801. Among other things, the AWPA requires agricultural employers to promptly pay farmworkers the full amount of the wages due to them, including, when applicable, wages due them under the regulations governing the H-2A worker program. The AWPA also prohibits agricultural employers from violating without justification the working arrangements that they enter into with farmworkers who they employ. A farmworker is entitled to have his employer live up to the promises he has made, including assurances that the job conditions will comply with federal rules relating to worker safety and to the H-2A program.

24. 42 U.S.C. § 1981 prohibits discrimination against workers on the basis of race and their status as United States citizens.

## STATEMENT OF FACTS

25. Gregory Carr plants, grows, and harvests a variety of agricultural crops in and near Leflore County, Mississippi. Among his major crops are rice and soybeans. Before the start of each agricultural season, Gregory Carr hires workers to assist in the planting, cultivation, and harvesting of crops and to otherwise provide agricultural labor services in support of his farming activities and those of his alter egos, including Intrepid Inc., Craigside Farms Inc., TG Farms Inc., and NS Farms Inc.

26. Plaintiffs Nash, Shaw, Cason, Lewis and Harris are among the local U.S. workers whom Gregory Carr has employed to perform a range of agricultural tasks in his farming operation.

27.     At all times relevant to this action, Plaintiffs were employees of Gregory Carr. Gregory Carr assigned Plaintiffs their tasks on a daily basis, oversaw and directed their work and the manner in which they did that work, and paid them their wages.

28.     At various times from 2018 to the present, Plaintiffs worked full-time on a seasonal basis for Gregory Carr from approximately March through November, depending on weather and crop growth. Plaintiffs' work was an integral part of the regular business of Gregory Carr's enterprise. Plaintiffs did not provide any of their own equipment, nor did they set their own pay rates or methods of work.

29.     Gregory Carr's enterprise was known to Plaintiffs as a single operation, which they referred to as "Greg Carr Farms" or simply "Greg Carr".

30.     Gregory Carr's agricultural operation and its component entities share physical infrastructure and equipment, with workers routinely assigned across entities, generally without being informed as to which specific entity they are working for at any given time.

31.     Gregory Carr's agricultural operation and its component entities all share common management. Gregory Carr manages the business affairs of the enterprise and employs one supervisor, known to Plaintiffs as "Dooley," who supervises the day-to-day activities of workers at all the component entities.

32.     All final hiring and firing decisions across the component entities are made by Gregory Carr or by Plaintiffs' direct supervisor "Dooley" under Gregory Carr's supervision.

33.     At all times relevant to this action, Gregory Carr employed 11 or more persons in his agricultural enterprise.

34.     Beginning in 2018, Gregory Carr used his alter ego Intrepid Inc., to apply for admission of foreign H-2A guestworkers. To obtain authorization for the admission of these

foreign workers, Gregory Carr has annually sought and obtained DOL certification as described in Paragraphs 16 through 22.

35.     Intrepid Inc. is an alter ego of Gregory Carr. Intrepid Inc. has been administratively dissolved as a corporation since 2019, although Gregory Carr continues to use the corporation's name to hire H-2A workers. At the time of its dissolution, its listed director and president was Gregory Carr. Intrepid Inc. does not act independently in its own interest. Gregory Carr has used his control over Intrepid Inc. to avoid his obligations to pay wages and provide job opportunities to Plaintiffs Nash, Shaw, Cason, Lewis, and Harris and to other U.S. workers at least equal to those extended to the white South African H-2A workers.

36.     Throughout the period he has employed H-2A workers, Gregory Carr has annually hired C.O.C. Placement Services of Mississippi LLC ("C.O.C. Placement") as his representative and agent to assist the farm in recruiting, soliciting, hiring, and furnishing seasonal agricultural labor. As Gregory Carr's H-2A agent, C.O.C. Placement is responsible for preparing Gregory Carr's applications for temporary labor certification, including the job orders submitted with the H-2A applications. The job orders prepared by C.O.C. Placement are also used by Gregory Carr to recruit and solicit U.S. workers for the positions as part of the farm's positive recruitment requirements pursuant to 20 C.F.R. §§ 655.150 through 655.158. Gregory Carr pays C.O.C. Placement a fee for its services.

37.     The job requirements listed in the job orders submitted with the H-2A applications are being able to obtain a driver's license within 30 days of hire, basic English literacy and math skills, the ability to work outdoors during periods when temperatures could exceed 100 degrees Fahrenheit, and the ability to push, pull, sit, and walk for extended periods.

- 9 -

38.     Each of the H-2A applications submitted on Gregory Carr's behalf in the name of Intrepid Inc. included a declaration, signed under the penalties of perjury by Gregory Carr, that in employing H-2A workers, the employer would comply with several conditions, including the following:

     a.  That the employer had conducted and would continue to conduct the required recruitment procedures (including those in 20 C.F.R. § 655.153);

     b.  That U.S. workers would be offered and provided wages, benefits, and job conditions no less than those that the employer was offering and providing to its H-2A workers;

     c.  That the employer would pay at least the AEWR to H-2A workers and U.S. workers in corresponding employment;

     d.  That the employer's job opportunity would comply with the requirements of 20 C.F.R. § 655, Part B, including the provisions regarding recordkeeping, 20 C.F.R. § 655.122(j); wage statements, 20 C.F.R. § 655.122(k); worker employment contracts, 20 C.F.R § 655.122(q);

     e.  That the employer would display in a conspicuous place postings of worker rights under the H-2A program, 20 C.F.R. § 655.135(l); and

     f.  That the employer would comply with applicable Federal and State health and safety laws as required by 20 C.F.R. § 653.501(c)(3)(iii).

39.     With respect to each of his H-2A applications seeking to hire foreign workers, Gregory Carr submitted to the DOL a written recruitment report, as required by 20 C.F.R. § 655.156. These reports were submitted on a form prepared by C.O.C. Placement. Each of these reports stated that Gregory Carr had contacted his former U.S. employees by phone or e-mail,

- 10 -

that he had offered them employment at the wages and job terms described in his H-2A application, and that none of these former employees was available to help fill the manpower requirements of Carr's H-2A application. These statements were false; in fact, Gregory Carr never contacted Plaintiffs and his other U.S. worker employees to recruit them for employment at the wages and job terms described in his H-2A applications.

40. Based on the information contained in the H-2A applications submitted by Gregory Carr in the name of Intrepid Inc., including the declarations described in Paragraph 38, the DOL granted temporary labor certifications for employment of H-2A workers on Gregory Carr's operation for each agricultural season from 2018 through the present. Gregory Carr intended to and did employ the H-2A workers obtained as a result of these applications throughout his operation, including those operations of his alter egos, Intrepid Inc., Craigside Farms Inc., TG Farms Inc., and NS Farms Inc.

41. From 2018 to the present, Gregory Carr has not made the same kind and degree of effort to recruit U.S. workers, including Plaintiffs, as he did to obtain foreign workers through C.O.C. Placement.

42. The H-2A guestworkers Gregory Carr hired have been white citizens of the Republic of South Africa. None of the South African H-2A workers hired by Gregory Carr have been Black, despite the fact that Black individuals comprise approximately 80% of that nation's population, as compared to a white population estimated at less than 8% of the country's populace.

43. Plaintiffs met the job requirements listed in the job orders as described in Paragraph 37.

- 11 -

44.     The job duties listed in the H-2A applications from 2018 to the present include driving tractors and operating farm equipment to till the soil, plant, irrigate, fertilize and harvest crops, as well as repairing and maintaining farm equipment. Starting in its 2022 application and continuing to the present, the job duties also explicitly list using hand tools in fields to maintain proper conditions for crop growth and remove weeds, cleaning and servicing equipment, operating irrigation equipment, and assisting in the transfer and loading of the harvested crops into grain bins.

45.     The South African H-2A workers performed those job duties listed in the job orders from 2018 to the present, as well as agricultural tasks not listed in those job orders.

46.     During the periods they were employed by Gregory Carr, Plaintiffs were assigned to and performed tasks that were among those described in the H-2A applications for those years and also were assigned to and performed tasks that the H-2A workers performed that were not included in the job orders for those years.

47.     From 2018 through the present, Gregory Carr compensated his white H-2A workers at the Mississippi AEWR or higher hourly wage rates. The applicable hourly AEWRs were as follows:

|      |         |
|------|---------|
| 2018 | $ 10.73 |
| 2019 | $ 11.33 |
| 2020 | $ 11.83 |
| 2021 | $ 11.88 |
| 2022 | $ 12.45 |
| 2024 | $ 13.67 |
| 2024 | $ 14.53 |

- 12 -

2025                              $ 14.83

48.     For work done while employed by Gregory Carr from 2018 to the present,

Plaintiffs were compensated at a rate of $10 per hour for all work performed, despite performing

the same or similar work as the white South African H-2A workers.

49.     On most occasions, Plaintiffs were paid their wages in cash. Payroll tax

deductions were not made from the Plaintiff's wages, nor were employer Social Security and

Medicare contributions made on their behalf pursuant to federal law.

50.     Each year, Plaintiffs were issued 1099-NEC Forms (1099-MISC Forms before

2020), even though they were employees of Gregory Carr and were not independent contractors.

The 1099 Forms were issued by one or more of Gregory Carr's alter egos, including Craigside

Farms Inc., TG Farms Inc., and NS Farms Inc.  Despite the fact that he was Plaintiffs' employer

under the Internal Revenue Code and related tax statutes, Gregory Carr failed to pay any taxes or

make required contributions with respect to Plaintiffs' earnings, even though these wages were

subject to both the Federal Insurance Contributions Act, 26 U.S.C. §§ 3101-3128, 3131-3136,

and the Federal Unemployment Tax Act, 26 U.S.C. §§ 3301-3311.

51.      In violation of the AWPA, 29 U.S.C. § 1831(c)(2), and its attendant regulations,

29 C.F.R. § 500.80(d), Gregory Carr failed to provide Plaintiffs on each payday with a written

statement containing the data required to be disclosed under the statute and its implementing

regulations. Gregory Carr also failed to provide Plaintiffs with written statements on or before

each payday containing the necessary information specified and required under 20 C.F.R. §

655.122(k).

52.     At various times relevant to this case, Gregory Carr offered additional hours of

employment to the white South African H-2A workers on weekends but oftentimes did not offer

- 13 -

these same employment opportunities to Plaintiffs. Plaintiffs Nash, Cason, Lewis and Harris were available and willing to perform this weekend employment. As a result, Plaintiffs Nash, Cason, Lewis and Harris were denied the opportunity to earn as much additional money for weekend work as the white South African H-2A workers.

53.     Plaintiff Nash began working for Gregory Carr in 2018.

54.     Plaintiffs Shaw, Cason and Harris began working for Gregory Carr in 2020.

55.     Plaintiff Lewis began working for Gregory Carr in 2023.

56.     In 2020, Plaintiff Nash was informed that there was no further work available for him at Gregory Carr's operations, even though he was able, willing, and qualified to continue to do the work. As a result, Mr. Nash was not offered employment by Gregory Carr for the remainder of the 2020 agricultural season or in the 2021 agricultural season, despite the fact that white South African H-2A workers were employed for those seasons. Gregory Carr allowed Nash to return to work on the farm in 2022.

57.     In 2023, Plaintiffs Nash and Harris were informed that there was no further work available for them in Gregory Carr's operations, even though they were able, willing, and qualified to do the work. As a result, Nash and Harris were not offered employment by Gregory Carr for the remainder of the 2023 agricultural season or in the 2024 or 2025 agricultural seasons, despite the fact that white South African H-2A workers were employed for those seasons and Nash and Harris were able, willing and qualified to perform the South Africans' job duties .

58.     In 2024, Plaintiff Shaw was informed that there was no further work available for him at Gregory Carr's operations, even though he was able, willing, and qualified to continue to do the work. As a result, Shaw was not offered employment by Gregory Carr for the remainder

of the 2024 agricultural season or in the 2025 agricultural season, even though white South African H-2A workers were employed for those seasons.

59.     At the end of the 2024 season, Plaintiff Lewis was informed that there was no further work available for him at Gregory Carr's operations, even though he was able, willing and qualified to continue to do the work. As a result, Lewis was not offered employment by Gregory Carr for the 2025 agricultural season, even though white South African H-2A workers were employed for the season.

60.     Plaintiff Cason was employed at Gregory Carr's operations during much of the 2025 agricultural season. Cason was terminated from this job in early September 2025. This termination was based on Cason's insistence on his rights under the AWPA and the H-2A regulations through his participation in this litigation. Following his termination, Cason remained able and willing to work for Carr through the conclusion of the 2025 agricultural season under the terms of Carr's 2025 H-2A application,

61.     Plaintiffs were transported between home and work by Carr employee Robert Hampton, also known as "Preacher, in his personal vehicle. Robert Hampton is not an immediate family member of Gregory Carr. Driving Plaintiffs to and from work was one of Hampton's job duties and his gas was paid for by Carr.

62.     The vehicle used by Robert Hampton to transport Plaintiffs was not compliant with 29 U.S.C. § 1841(b)(1)(C), as it failed to have an insurance policy or liability bond insuring Carr or one of his business entities from liability.

63.     Plaintiff Shaw's direct supervisor Lloyd Vance, also known as "Dooley," used the n-word several times to refer to Shaw within earshot of him, which distressed him.

- 15 -

64.    Plaintiffs' direct supervisor Lloyd Vance is a white U.S. citizen who is paid a higher wage than Carr's Black U.S. workers and who is not characterized by Carr as an "independent contractor".

65.    Gregory Carr intentionally discriminated against Plaintiffs because they are Black U.S. citizens. He denied Plaintiffs the right to contract on equal terms, imposed unequal contractual conditions, and otherwise interfered with their contractual rights, compared to that of his white H-2A workers and his white U.S. workers.

66.    Among their duties while employed by Gregory Carr, Plaintiffs worked in the farm's grain bins. For all years relevant to this action, Gregory Carr failed to equip the grain bins with body harnesses with lifelines or boatswain chairs, as required by 29 C.F.R. § 1910.272(g)(2). Plaintiffs experienced fear and distress related to their work in the grain bins due to the lack of safety equipment.

67.    At no time did Gregory Carr display in a conspicuous place at Plaintiffs' worksite a DOL poster (Form WH 1376) notifying workers of their rights under the AWPA, including the right to obtain a written statement of the terms and conditions of employment. Prior to 2025, Plaintiffs were unaware of their rights under the AWPA.

68.    At no time did Gregory Carr display in a conspicuous place at Plaintiffs' worksite a DOL poster (Form WH 1491) notifying the workers of their rights under the H-2A program. Prior to 2025, Plaintiffs were unaware of their rights under the H-2A program and its implementing regulations.

69.    Gregory Carr has engaged in a continuing pattern of failing to pay Plaintiffs and other U.S. workers the same wages, benefits and job opportunities as his H-2A workers.

- 16 -

70.     Gregory Carr's unlawful practices are ongoing, and without injunctive relief, workers will continue to suffer underpayment of wages and deprivation of benefits and job opportunities.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT (AWPA)
AND CODE OF FEDERAL REGULATIONS

71.     This count sets forth a claim by Plaintiffs for damages and declaratory relief with respect to Gregory Carr's violations of the AWPA and its attendant regulations during the agricultural seasons from 2018 through 2025.

72.     Plaintiffs were employed as seasonal agricultural workers within the meaning of the AWPA, 29 U.S.C.§ 1802(10)(A). Each of them was employed in Gregory Carr's operations in agricultural employment of a seasonal nature without being required to be absent overnight from their respective permanent places of residence in or near Sunflower County, Mississippi.

73.     Plaintiffs were engaged in corresponding employment within the meaning of the H-2A regulations, 20 C.F.R. § 655.103(b) with the H-2A workers employed on Gregory Carr's operations. While they were employed on Gregory Carr's operations from 2018 through the present, Plaintiffs were performing tasks described in the H-2A applications and job orders submitted on Gregory Carr's behalf through Intrepid Inc. and/or agricultural tasks otherwise performed by H-2A workers, as set out in Paragraphs 44 through 46.

74.     At all times relevant to this action, Gregory Carr was an "agricultural employer" within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that he operated a farm and employed seasonal agricultural workers, including Plaintiffs.

75.     Pursuant to 20 C.F.R. § 655.122(q), the H-2A applications and job orders submitted on behalf of Gregory Carr in the name of Intrepid Inc. were binding work contracts

between Plaintiffs and Gregory Carr during the periods encompassed in the H-2A applications from 2018 through the present.

76. Plaintiffs' work contracts, as embodied in the H-2A applications and job orders submitted on behalf of Gregory Carr in the name of Intrepid Inc., constituted working arrangements under the AWPA, 29 U.S.C. § 1832(c). That provision states "No farm labor contractor, agricultural employer, or agricultural association shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association with any seasonal agricultural worker".

77. Plaintiffs were Gregory Carr's "employees" as defined by 26 U.S.C. § 3121(d) and § 3306(i). Gregory Carr was the person "employ[ing]" Plaintiffs as defined by 26 U.S.C. § 3121(b) and was their "employer" as defined by 26 U.S.C. § 3306(a). Working arrangements under the AWPA require payment of payroll taxes by employers that are mandated by 26 U.S.C. § 3111 and 26 U.S.C. § 3301.

78. Contrary to the AWPA, 29 U.S.C. § 1832(c), Gregory Carr violated without justification the terms of his working arrangements with Plaintiffs, as embodied in the H-2A applications and job orders submitted on behalf of Gregory Carr through Intrepid Inc. Among other things:

      a. Gregory Carr never notified Plaintiffs in writing or otherwise of the availability at the AEWR of the positions for which H-2A workers were being hired;

      b. Gregory Carr failed to offer and provide the same wages, benefits and job opportunities to Plaintiffs as were offered and provided to his H-2A workers;

      c. Gregory Carr failed to pay Plaintiffs wages at least equal to the AEWR;

- 18 -

    d.   Gregory Carr failed to provide written wage statements on or before each payday containing the information required under 29 C.F.R. § 655.122(k).

    e.   Gregory Carr failed to display in a conspicuous place a DOL poster summarizing workers' rights under the H-2A program;

    f.   Gregory Carr failed to make tax contributions and payments relating to Plaintiffs' labor as required by 26 U.S.C. § 3111 and 26 U.S.C. § 330; and

    g.   Gregory Carr failed to comply with applicable health and safety regulations. Among other things, Gregory Carr failed to provide body harnesses with lifelines or boatswain chairs as required by 29 C.F.R. § 1910.272(g)(2) and 20 C.F.R. § 653.501(c)(3)(iii) when Plaintiffs were entering grain bins from above.

79.    The AWPA provision 29 U.S.C. § 1832(a) states "Each farm labor contractor, agricultural employer, and agricultural association which employs any seasonal agricultural worker shall pay the wages owed to such worker when due."

80.    In violation of the AWPA, 29 U.S.C. § 1832(a), Gregory Carr failed to pay Plaintiffs their wages when due in multiple respects. He failed to pay the AEWR rate, and he failed to pay any taxes or make required contributions with respect to Plaintiffs' earnings, despite the fact that these wages were subject to both the Federal Insurance Contributions Act and the Federal Unemployment Tax Act.

81.    In violation of the AWPA, 29 U.S.C. § 1831(b), Gregory Carr failed to display in a conspicuous location a DOL poster summarizing the rights and protections under the AWPA, including the right of seasonal workers to obtain a written statement of the job terms upon request.

82.     Gregory Carr's violations of the AWPA and the Code of Federal Regulations were the natural result of his conscious and deliberate acts. These violations occurred as part of his regular business practices. His violations of the AWPA were intentional within the meaning of the Act, 29 U.S.C. § 1854.

83.     As a result of Gregory Carr's violations of the AWPA and the Code of Federal Regulations as set out in this count, Plaintiffs have suffered damages, including unpaid wages due them at the AEWR, unpaid wages due to failure to make required tax contributions and payments, and denial of job opportunities to which they were entitled as U.S. workers.

84.     Gregory Carr's unlawful practices are ongoing, and without injunctive relief, workers will continue to suffer underpayment of wages and deprivation of benefits and job opportunities.

### SECOND CLAIM FOR RELIEF
### BREACH OF CONTRACT UNDER MISSISSIPPI LAW

85.     This count sets forth a claim by Plaintiffs for damages with respect to Gregory Carr's breach of his employment contracts with Plaintiffs, as embodied in the H-2A applications and job orders he submitted in the name of Intrepid Inc. The First Claim for Relief explains how this violated the AWPA and the Code of Federal Regulations.  This second claim relates to a breach of contract under Mississippi law.

86.     In accordance with AWPA and 20 C.F.R. § 655.122(q), the H-2A applications and job orders were the work contracts for Plaintiffs during the periods they were employed on Gregory Carr's operations from 2018 through the present. While the existence of these contracts is confirmed by federal law, the breach of them is also a violation of Mississippi law.

87.     Gregory Carr breached his work contracts with Plaintiffs in several respects, including the following:

- 20 -

a. Gregory Carr failed to notify Plaintiffs in writing or otherwise of the availability at the AEWR of the positions for which H-2A workers were hired;

b. Gregory Carr failed to offer and provide the same wages, benefits, and job opportunities to Plaintiffs as were offered and provided to its H-2A workers;

c. Gregory Carr failed to pay Plaintiffs wages at least equal to the AEWR;

d. Gregory Carr failed to provide written wage statements on or before each payday containing the information required under 29 C.F.R. § 655.122(k).

e. Gregory Carr failed to display in a conspicuous place a DOL poster summarizing workers' rights under the H-2A program;

f. Gregory Carr failed to make tax contributions and payments relating to Plaintiffs' labor as required by 26 U.S. C. § 3111 and 26 U.S. C. § 3301; and

g. Gregory Carr failed to comply with applicable Federal and State health and safety laws by, among other things, failing to provide Plaintiffs with body harnesses with lifelines or boatswain chairs as required by 29 C.F.R. §1910.272(g)(2) and 20 C.F.R. §653.501(c)(3) on those occasions on which they entered grain bins from above.

88. Plaintiffs did perform, and at all relevant times were ready, willing, and able to perform, but for Gregory Carr's breaches, all of their obligations under their agreements.

89. Gregory Carr's breaches of his contract obligations have caused Plaintiffs economic damages.

90. Gregory Carr's breaches of his contract with Plaintiffs, despite signing the declarations described in Paragraph 38, were intentionally wrong or grossly negligent.

- 21 -

91. Gregory Carr's unlawful practices are ongoing, and without injunctive relief, workers will continue to suffer underpayment of wages and deprivation of benefits and job opportunities.

**THIRD CLAIM FOR RELIEF**

VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866

42 U.S.C. § 1981

92. This count sets forth a claim by Plaintiffs for damages with respect to the Gregory Carr's discrimination on the basis of Plaintiffs' race and status as U.S. citizens, pursuant to 42 U.S.C. § 1981, originally enacted as part of the Civil Rights Act of 1866 and later amended by the Civil Rights Act of 1991.

93. Gregory Carr intentionally sought out white South African workers to fill its labor force and paid them at higher rates than its Black U.S. workers, including Plaintiffs. Gregory Carr gave preference in job assignments to their white foreign workers and failed to offer at least equal job opportunities to their Black workers, including Plaintiffs.

94. Through the acts detailed in the Complaint, Gregory Carr intentionally discriminated against the Plaintiffs on the basis of race and their status as U.S. citizens in their employment contracts by imposing discriminatory terms of employment and by denying them the benefits, privileges, terms, and conditions of the contractual relationship.

95. Gregory Carr's actions violated Plaintiffs' rights to make and enforce contracts and receive full and equal benefit of the law as guaranteed by 42 U.S.C. § 1981.

96. But for Plaintiffs' race and status as U.S. citizens, Defendant would not have denied or impaired their contractual rights.

97.     Gregory Carr's conduct intentionally and impermissibly favored white foreign workers over Plaintiffs in the making and enforcement of employment contracts and receiving full and equal benefit of the law in violation of 42 U.S.C. § 1981.

98.     As a direct result of Gregory Carr's actions, Plaintiffs were subjected to discriminatory terms and conditions of employment and have suffered substantial damages.

### FOURTH CLAIM FOR RELIEF
VIOLATIONS OF THE RACKATEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)
18  U.S.C. § 1961-1968

99.     This count sets forth a claim by Plaintiffs for damages under RICO based on Gregory Carr's racketeering activities.

100.     Gregory Carr constitutes a "person" within the meaning of 18 U.S.C. § 1961(3).

101.     The association-in-fact between Intrepid Inc. and C.O.C. Placement constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4) that engaged in interstate and foreign commerce. The enterprise functioned as a continuing unit under Gregory Carr's authority. Intrepid Inc. served as the nominal agricultural employer through which H-2A applications were filed, and C.O.C. Placement operated as the agency that prepared, transmitted, and corresponded with the U.S. DOL on Intrepid's behalf. The enterprise possessed an ongoing organizational structure and purpose independent of the racketeering acts and was capable of lawful operation.

102.     At all times relevant to this action, GC's farming operations depended on the Intrepid Inc and C.O.C. Placement enterprise's repeated submission of false and misleading H-2A applications. By misrepresenting compliance with domestic recruitment and wage requirements, the enterprise enabled Gregory Carr to obtain H-2A labor certifications while

depriving employment opportunities to U.S. workers and paying them at a sub-AEWR pay rate when employed.

103.    As required by 20 C.F.R. § 655.156, C.O.C. Placement, submitted to the DOL, in conjunction with each of Intrepid's H-2A applications, a written recruitment report. Each of these reports falsely stated that Gregory Carr had contacted all his former U.S. employees by phone or e-mail and that none of them were available to help fill the manpower requirements of Carr's H-2A application. In fact, Gregory Carr failed to contact all of his previous domestic workers regarding the job opportunities described in his H-2A applications. C.O.C. Placement knew or should have known that the information contained in the recruitment reports was false but nonetheless submitted these false reports to the DOL in order to allow Carr to obtain temporary labor certification for the employment of H-2A workers and maintain his lower payment of domestic workers.

104.    Each of the H-2A applications submitted in the name of Intrepid Inc. included a declaration, signed under the penalties of perjury by Gregory Carr, that in employing H-2A workers, the employer would comply with several conditions, including the following:

    a.    That the employer had conducted and would continue to conduct the required recruitment procedures (including those in 20 C.F.R. § 655.153);

    b.    That U.S. workers would be offered and provided wages, benefits, and job conditions no less than those that the employer was offering and providing to its H-2A workers;

    c.    That the employer would pay at least the AEWR to H-2A workers and U.S. workers in corresponding employment;

These statements were false; Carr never paid Plaintiffs wages or offered them job opportunities at least equal to those he provided to his H-2A employees.

105.    Gregory Carr intentionally lied in the recruitment reports described in Paragraph 105 and when signing the declaration under penalty of perjury as described in Paragraph 106. Gregory Carr had not conducted the required recruitment of U.S. workers and had no intention to continue conduct the required recruitment procedures or to offer and provide to U.S. workers wages, benefits, and job conditions no less than those that he was offering and providing his H-2A workers. C.O.C. Placement and Intrepid Inc. knew or should have known that these statements by Carr were false but nonetheless conspired with Carr to submit these false statements to the DOL in order to allow Carr to obtain temporary labor certification for the employment of H-2A workers and maintain a workforce of U.S. workers under inferior terms.

106.    Gregory Carr's H-2A applications, with the signed declaration under penalty of perjury and the positive recruitment reports, were submitted to the DOL electronically and/or via post mail.

107.    The actions described in Paragraph 107 constituted "racketeering activity" as defined in 18 U.S. Code § 1961(1) because there were acts which were indictable under any of the following provisions of title 18, to wit, Section 1341 (mail fraud) or Section 1343 (wire fraud), and Section 1351 (fraud in foreign labor contracting).

108.    The enterprise engaged in this fraudulent conduct repeatedly over multiple H-2A application cycles, thereby constituting a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

109.    Gregory Carr conducted and participated in the affairs of the enterprise through this pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

- 25 -

110.     Gregory Carr conspired with C.O.C. Placement and Intrepid Inc to conduct the enterprise's affairs through the same racketeering pattern, in violation of 18 U.S.C. § 1962(d).

111.     As a direct and proximate result of Gregory Carr's racketeering activities, Plaintiffs suffered injury to their business and property, including the loss of job opportunities and the loss of wages to which they would have been entitled as "corresponding workers" to the H-2A workers.

112.     Plaintiffs' injuries were the intended and foreseeable consequence of Gregory Carr's fraudulent scheme. But for Defendant's racketeering activity, fewer H-2A positions would have been approved and Plaintiffs would have obtained employment on the terms promised in the H-2A applications.

113.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages, costs, and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter an order:

a.   Declaring that Defendant violated the AWPA and its attendant regulations as set out in Plaintiffs' First Claim for Relief;

b.   Granting judgment in favor of Plaintiffs and against Defendant on the claims under the AWPA set forth in Plaintiffs' First Claim for Relief, and awarding each Plaintiff his actual damages or statutory damages of $500, whichever is greater, for every violation of the AWPA set forth in that count,

c.   Enjoining Defendant from failing to file the necessary forms and documents with appropriate governmental agencies so as to properly credit Plaintiffs' individual Social Security earnings records with their work as employees of Gregory Carr.

d.   Granting judgment in favor of Plaintiffs and against Defendant on the breach of contract claims set forth in Plaintiffs' Second Claim for Relief and awarding each Plaintiff his actual and compensatory damages,

e.   Granting judgment in favor of Plaintiffs and against Defendant on the discrimination claims set forth in Plaintiffs' Third Claim for Relief and awarding each Plaintiff his actual and compensatory damages;

f.   Granting judgment in favor of Plaintiffs and against Defendant on the racketeering claims set forth in Plaintiffs' Forth Claim for Relief and awarding each Plaintiff three times his actual damages;

g.   Awarding Plaintiffs punitive damages with respect to the breach of contract claims set forth in Plaintiffs' Second Claim for Relief in an amount to be determined at trial;

h.   Awarding Plaintiffs punitive damages with respect to the discrimination claims set forth in Plaintiffs' Third Claim for Relief in an amount to be determined at trial;

i.   Enjoining Gregory Carr from future violations of the AWPA;

j.   Awarding Plaintiffs their court costs, including discretionary costs;

k.   Granting Plaintiffs an award of reasonable attorney's fees;

l.   Awarding Plaintiffs pre- and post-judgment interest as allowed by law; and

m.   Awarding Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

- 27 -

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Respectfully submitted,


*/s/ Robert McDuff*

Robert McDuff, MS Bar No.  2532
MISSISSIPPI CENTER FOR JUSTICE
210 E. Capitol Street
Suite 1800
Jackson, MS 39201
Telephone: (601) 259-8484
Facsimile: (601) 352-4769
rmcduff@mscenterforjustice.org

Marion Lourdes Delaney, TN Bar No. 042643
*Admitted pro hac vice*
Teresa Pulaski, TN Bar No. 041365
*Admitted pro hac vice*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: 830-267-9320
mdelaney@trla.org
tpulaski@trla.org

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI

### GREENVILLE DIVISION

| | | |
|---|---|---|
| **MICHAEL ANTHONY NASH,** | ) | |
| **JIMMY SHAW,** | ) | |
| **VINNIE CASON,** | ) | **Civil Action** |
| **GRANT LEWIS, and** | ) | **No: 4:25-CV-059-DMB-JV** |
| **CHARLESTON TAURVONTA HARRIS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **RICO STATEMENT** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GREGORY CARR,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### RICO STATEMENT

Plaintiffs file this RICO Statement pursuant to Local Rule 83.8 of the Court's Local Civil Rules. The allegations contained in this Statement expressly incorporate the allegations contained in the proposed Second Amended Complaint.

**(1) State whether the alleged unlawful conduct is in violation of 18 U.S.C. § 1962(a), (b), (c), and/or (d).**

Plaintiffs allege violations of 18 U.S.C. §§ 1962(c) and (d).

**(2) List each Defendant and state the alleged misconduct and basis of liability of each Defendant.**

Plaintiffs bring the aforementioned RICO claims against Gregory Carr.

Defendant Gregory Carr orchestrated and directed a scheme to secure H-2A labor certifications and operate a dual-wage workforce by misrepresenting his compliance with federal

recruitment requirements and his intention to abide by wage and benefit parity obligations. Through Intrepid, Inc. and C.O.C. Placement Services of Mississippi, LLC ("C.O.C. Placement"), Carr caused false H-2A applications and recruitment reports to be filed with the U.S. Department of Labor. The applications falsely claimed that that his U.S. employees from prior seasons had been contacted and offered work, and that no U.S. workers had applied for or were available to fill the positions and that both domestic and foreign workers would receive at least the Adverse Effect Wage Rate (AEWR). In truth, Gregory Carr failed to contact all of his previous domestic workers regarding the job opportunities described in his H-2A applications. Although he had already arranged to hire several domestic workers, including Plaintiffs, Carr intended to pay them wages below the AEWR which was paid to his H-2A workers.

By concealing that plan and directing Intrepid, Inc. and C.O.C. Placement to prepare and transmit false filings through the mails and electronic systems, Gregory Carr conducted the enterprise's affairs through a pattern of mail fraud (18 U.S.C. § 1341), wire fraud (§ 1343), and fraud in foreign labor contracting (§ 1351) to exploit the H-2A program, suppress local wages, and injure Plaintiffs through lost AEWR-level pay and job opportunities.

**(3) List the alleged wrongdoers, other than the Defendant(s) listed above, and state the alleged misconduct of each wrongdoer.**

Additional wrongdoers not named as defendants for the purposes of the RICO claims include: (1) Intrepid Inc., a dissolved corporation owned and controlled by Gregory Carr that served as the nominal H-2A employer in the applications and certifications. Gregory Carr used Intrepid Inc.'s  corporate role to submit H-2A applications through which he concealed his parallel use of domestic labor at sub-AEWR wages; and (2) C.O.C. Placement, an agency that knowingly prepared and transmitted false H-2A applications and recruitment reports for Intrepid

Inc; C.O.C.'s actions enabled Gregory Carr to obtain H-2A certifications and implement his dual-wage workforce.

**(4) List the alleged victims and state how each victim was allegedly injured.**

Plaintiff Michael Anthony Nash, Plaintiff Jimmy Shaw, Plaintiff Vinnie Cason, Plaintiff Grant Lewis, and Plaintiff Charleston Taurvonta Harris, as well as other domestic farmworkers employed by or available to work for Gregory Carr's operations, were victims of RICO defendant Gregory Carr's unlawful scheme. As a direct and proximate result of Gregory Carr's scheme and conspiracy, Plaintiffs have suffered injuries in their business and property. The RICO injuries to Plaintiff's business and property are summarized *infra*.

From 2018 through 2025, Gregory Carr, operating through Intrepid Inc. and C.O.C. Placement, submitted H-2A applications and recruitment reports falsely stating that prior domestic employees had been contacted and that no U.S. workers had applied or were available to work in the positions described in Carr's H-2A applications. These misrepresentations caused the United States Department of Labor to grant certification for employment of a greater number of foreign H-2A workers than was warranted. As a result, fewer U.S. workers were hired, existing domestic workers were offered fewer hours of work or were terminated prematurely, and Plaintiffs were deprived of seasonal employment they otherwise would have obtained.

Plaintiffs were further injured when Gregory Carr, after receiving temporary labor certification, maintained a mixed workforce of H-2A and domestic laborers but paid domestic workers below the Adverse Effect Wage Rate (AEWR) while compensating H-2A workers at or above the AEWR. As a result, Plaintiffs and other U.S workers were underpaid and local wage levels were suppressed.

Defendant Carr's conduct directly and proximately caused measurable losses in wages, and job opportunities, constituting legally cognizable injury to Plaintiffs' business and property for which relief is available under 18 U.S.C. § 1964(c).

**(5) Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering must include the following information:**
        <u>**RICO Claim I: 18 U.S.C. § 1962(c)**</u>.

    **(A) List the alleged predicate acts and the specific statutes which were allegedly violated;**

The predicate acts include: (1) mail fraud, in violation of 18 U.S.C. § 1341, (2) wire fraud, in violation of 18 U.S.C. § 1343; and (3) fraud in foreign labor contracting, in violation of 18 U.S.C. § 1351.

    **(B) Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;**

The dates, participants and facts surrounding each predicate act are as follows:

        i. **Mail Fraud:** See Section (5)(C), *infra.*

        ii. **Wire Fraud:** See Section (5)(C), *infra.*

        iii. **Fraud in Labor Contracting**

From 2018 through 2025, Gregory Carr, through Intrepid Inc. and C.O.C. Placement, knowingly made materially false representations to the U.S. Department of Labor ("DOL") in connection with the recruitment of foreign workers. Gregory Carr certified under penalty of perjury that: (1) he had contacted his former domestic employees and offered them re-employment under the terms of the job order submitted in conjunction with his H-2A

application; (2) no qualified U.S. workers had applied or were available; (3) upon certification, both H-2A and domestic workers in corresponding employment would receive at least the AEWR and equivalent benefits; and (4) he would continue to hire any minimally qualified, able, and willing U.S. workers who applied until at least halfway through the certified job period with the same wage and benefits given to the H-2A workers.

Each certification was false. Gregory Carr had not contacted all prior domestic workers with respect to the terms of his H-2A application. While he had arranged to and did hire several domestic laborers, Carr did so at sub-AEWR wages. He maintained a dual-wage system paying H-2A workers at the certified AEWR rate while paying Plaintiffs and other U.S. workers engaged in employment corresponding to that of the H-2As at substantially lower rates. Each H-2A application between the years 2018 and 2025 constitutes a separate violation of § 1351.

**(C) If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). Identify the time, place, and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;**

**i.  Mail Fraud**

As part of the H-2A application process each year, C.O.C. Placement, acting on behalf of Carr and Intrepid, mailed recruitment reports to the U.S. Department of Labor's Office of Foreign Labor Certification (OFLC) at the Chicago National Processing Center. Each report stated, "Available former U.S. employees contacted by phone or email: ZERO available."  These reports were signed by Gregory Carr and transmitted via the U.S. Postal Service or another commercial carrier from Leflore County, Mississippi, to Chicago, Illinois.

The recruitment reports currently available to Plaintiffs are dated January 2, 2019; January 15, 2020; January 4, 2021; January 18, 2022; January 11, 2023; January 12, 2024; and January 10, 2025, and upon information and belief, were mailed to OFLC shortly after being signed. Each report contained a materially false statement, and all parties involved knew the statement was false when written and submitted.

Upon information and belief, the Intrepid Inc–C.O.C. Placement enterprise also mailed checks for the required H-2A employer fees and per-worker fees from Leflore County, Mississippi, to the DOL's Office of Foreign Labor Certification in Chicago, Illinois, during each application cycle. These checks were mailed in connection with the electronically filed H-2A applications that contained the false recruitment reports described above and the false statements described in the wire-fraud section below. The mailings therefore furthered the scheme to defraud by ensuring the approval of certifications based on misrepresentations regarding recruitment and wage compliance.

### ii. Wire Fraud

During each H-2A filing cycle from 2018 through 2025, C.O.C. Placement, acting on behalf of Intrepid and Carr, used interstate electronic communications to transmit false and misleading application materials to federal and state labor authorities. C.O.C. Placement prepared and electronically submitted Form ETA-790/790A job orders through the DOL's Foreign Labor Application Gateway (FLAG) to the Mississippi Department of Employment Security for review and onward transmittal to the OFLC at the DOL's Chicago National Processing Center. C.O.C. Placement then filed the corresponding Form ETA-9142A applications for temporary employment certification through the same FLAG system from Mississippi to DOL office in Chicago, IL. These applications were submitted on or about

January 15, 2018; December 20, 2018; January 2, 2020; December 25, 2020; January 11, 2022; January 8, 2023; December 28, 2023; and December 21, 2024.

Each H-2A application contained materially false attestations, attested under penalty of perjury by Gregory Carr, that: (1) the employer had complied with all domestic recruitment obligations in good faith; (2) the terms and conditions of employment met H-2A program requirements, including payment of the Adverse Effect Wage Rate (AEWR) to all workers in corresponding employment; and (3) the employer would continue to hire qualified U.S. workers through the 50-percent point of the contract period.

Those attestations were knowingly false when they were made. Gregory Carr and C.O.C. Placement knew that domestic workers had not and would not be contacted nor hired as required, and that those domestic workers hired would be paid a wage below the AEWR. C.O.C. Placement and Gregory Carr also exchanged emails regarding the preparation, signature, and submission of these filings, and C.O.C. Placement communicated electronically with DOL analysts regarding certification status. These wire communications were integral to the fraudulent procurement of H-2A labor certifications and to the maintenance of a dual-wage workforce that deprived Plaintiffs of employment opportunities and lawful wages.

**(D)** **State whether there has been a criminal conviction for violation of the predicate acts;**
None known.

**(E)** **State whether civil litigation has resulted in a judgment in regard to the predicate acts;**
None known.

**(F)** **Describe how the predicate acts form a "pattern of racketeering activity"; and**

The predicate acts alleged (mail fraud, wire fraud, and fraud in foreign labor contracting), constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5). From 2018 through 2025, Gregory Carr, through the Intrepid Inc.–C.O.C. Placement enterprise, repeatedly engaged in materially identical fraudulent conduct: preparing, signing, and transmitting false H-2A applications and recruitment reports to the U.S. Department of Labor. Each year's application was a new instance of racketeering activity.

These acts were related in terms of participants, method, and objective. The repetition of the same fraudulent filings across eight consecutive H-2A application cycles demonstrates both closed-ended continuity (repetition over a substantial period) and open-ended continuity (a threat of continuing into future seasons). The consistent execution of the same scheme, directed by Gregory Carr, implemented by C.O.C. Placement, and carried out through Intrepid, Inc., satisfies the RICO requirement of a pattern of racketeering activity.

### (G) State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.

All predicate acts were part of a single, integrated plan directed by Gregory Carr. The scheme's purpose was to conceal Gregory Carr's employment of domestic workers at sub-AEWR wages while maintaining H-2A certification by falsely representing compliance with recruitment and wage-parity obligations.

The predicate acts were related in terms of participants, method, victims, and objective; each involved the same actors (Gregory Carr, C.O.C. Placement and Intrepid), the same means (false DOL filings), the same class of victims (domestic workers displaced or underpaid as a result of the fraud), and the same objective (to deprive Plaintiffs and other U.S. workers of equal

employment and wages). Collectively, these acts formed an organized common plan serving a continuous unlawful purpose.

### RICO Claim II: 18 U.S.C. § 1962(d)

See the responses to Sections (5)(A) – (G) regarding RICO Claim I *supra*. The responses to these sections regarding RICO Claim II are identical.

**(6) Describe in detail the alleged enterprise for each RICO claim. A description of each enterprise must include the following information:**
**RICO Claim I: 18 U.S.C. § 1962(c).**

**(A) State the names of the individuals, partnerships, corporations, associations, or other legal entities which allegedly constitute the enterprise;**

The enterprise consists of: (1) Intrepid Inc; and (2) C.O.C. Placement Services of Mississippi, LLC.

**(B) Describe the structure, purpose, function, and course of conduct of the enterprise;**

The enterprise is an association-in-fact between Intrepid Inc. and C.O.C Placement that functioned as a continuing unit under the direction and control of Gregory Carr. Intrepid Inc served as Gregory Carr's nominal farm employer and was used to obtain DOL H-2A temporary labor certifications. C.O.C. Placement operated as an independent agency that prepared and transmitted H-2A applications and recruitment reports on behalf of agricultural clients, including Intrepid Inc. and Carr.

The enterprise's legitimate purpose was to facilitate lawful agricultural employment by obtaining seasonal labor through the H-2A program. However, under Gregory Carr's direction, the enterprise's course of conduct became unlawful: C.O.C. Placement, acting for Intrepid Inc. and Carr, knowingly prepared and submitted materially false H-2A applications and reports to

the DOL that misrepresented domestic recruitment efforts and compliance with wage obligations. These coordinated actions were the mechanism through which Gregory Carr carried out the pattern of racketeering activity alleged herein.

The structure of the enterprise was stable and continuous. C.O.C. Placement and Intrepid Inc. each performed distinct, complementary roles in service of Gregory Carr's farming operations. C.O.C. Placement handled the preparation, transmission, and communication with the DOL, and Intrepid Inc. Served as the nominal employer and beneficiary of the temporary labor certifications. Together, these entities constituted an ongoing organization functioning as a unit for the purpose of fraudulently obtaining H-2A labor certifications and maintaining a dual-wage workforce.

### (C) State whether any Defendants are employees, officers, or directors of the alleged enterprise;

Gregory Carr was the owner and principal officer of Intrepid Inc., which, although it was formally dissolved following the onset of the racketeering activity, continued to operate in practice under his direction as a vehicle for obtaining H-2A labor certifications. Gregory Carr exercised managerial control over Intrepid's role within the enterprise.

Gregory Carr is not an officer, employee, or director of C.O.C. Placement.

### (D) State whether any Defendants are associated with the alleged enterprise;

Gregory Carr was associated with the enterprise in his capacity as Intrepid's owner and as the individual who directed C.O.C. Placement's contracted work on Intrepid's behalf. Through his coordination and oversight of both entities, Gregory Carr exercised decision-making authority that enabled and sustained the enterprise's unlawful course of conduct.

**(E) State whether the Plaintiff is alleging that the Defendants are individuals or entities separate from the alleged enterprise, or that the Defendants are the enterprise itself, or are members of the enterprise; and**

Plaintiffs allege that Gregory is a RICO "person," distinct from the association-in-fact "enterprise" composed of Intrepid Inc. and C.O.C. Placement. Gregory Carr conducted and participated, directly and indirectly, in the affairs of that enterprise through a pattern of racketeering activity. The enterprise itself, consisting of two distinct business entities that could have been operated for legitimate purposes, had an existence separate from the racketeering acts and could have functioned legitimately absent Gregory Carr's misuse.

**(F) If any Defendants are alleged to be either the enterprise itself or members of the enterprise, explain whether such Defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

No Defendant is alleged to be either the enterprise or a member of the enterprise.

## RICO Claim II: 18 U.S.C. § 1962(d)

See the responses to Sections (6)(A) – (F) regarding RICO Claim I *supra*. The responses to these sections regarding RICO Claim II are identical.

**(7) State whether the Plaintiff is alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity. In either event, describe in detail.**

Plaintiffs allege that the pattern of racketeering activity and the enterprise are separate. The enterprise, composed of Intrepid Inc. and C.O.C Placement, is an association-in-fact entity that exists and operates independently of the racketeering acts themselves. Intrepid Inc and C.O.C Placement each have legitimate business purposes. Intrepid Inc. serves as a farming

business engaged in seasonal labor management, and C.O.C Placement provides labor-recruitment and compliance services to multiple clients.

Gregory Carr, the RICO "person," conducted and participated in the affairs of this enterprise through a pattern of racketeering activity consisting of repeated acts of mail fraud, wire fraud, and fraud in foreign labor contracting. Those predicate acts were the method by which Gregory Carr exploited the enterprise's normal business functions for unlawful purposes, not the enterprise itself.

Accordingly, the enterprise supplied the organizational framework, while the pattern of racketeering activity represented the means through which Gregory Carr manipulated that structure to achieve his unlawful objectives.

**(8) Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The activities of the enterprise were lawfully organized around agricultural employment and labor recruitment. Intrepid, Inc operated as a farming business engaged in seasonal labor management. C.O.C. Placement was a professional agency that prepared H-2A applications and related documents for agricultural clients, including Intrepid Inc. In the ordinary course of their legitimate businesses, Intrepid and C.O.C. Placement could have collaborated to lawfully obtain H-2A labor certifications, provided that their filings accurately reflected recruitment efforts and wage obligations.

The racketeering activity, however, represented a deliberate deviation from those lawful operations. Under Gregory Carr's direction, the enterprise's normal processes for labor certification were transformed into a mechanism for fraud. Each year, Gregory Carr caused

Intrepid Inc and C.O.C. Placement to prepare and transmit false recruitment reports and certifications to the DOL, misrepresenting domestic recruitment efforts and its intentions to provide the same wage and benefits to domestic workers as H-2A workers. These acts of fraud were not inherent to the enterprise's ordinary work.

Thus, while the enterprise itself was structurally capable of lawful operation, Gregory Carr subverted its ordinary functions to further an unlawful scheme. The racketeering activity differed from the enterprise's usual and daily activities because it involved false representations, fabricated recruitment records, and systematic deception of a federal agency.

**(9) Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

The enterprise derived both financial and operational benefits from the pattern of racketeering activity. Intrepid benefited by maintaining its status as the approved employer of record for certified H-2A positions, even though that status rested on false representations. The misrepresentations allowed Intrepid to appear compliant with recruitment and wage requirements, preserving its standing with the DOL and enabling continued certification in subsequent seasons. C.O.C. Placement benefited directly through fees and a continuing business relationship with Intrepid. The success of each fraudulent filing reinforced C.O.C. Placement's reputation as a reliable intermediary capable of securing temporary labor certifications, sustaining its revenue stream from Intrepid and other agricultural clients.

**(10) Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

The enterprise's activities affected both interstate and foreign commerce. C.O.C Placement transmitted H-2A applications and related documents electronically and by mail

between Mississippi and DOL offices in other states, notably to the OFLC at the Chicago National Processing Center, using interstate communication systems and payment channels. The scheme also affected foreign commerce by inducing the recruitment and movement of foreign workers from South Africa to the United States pursuant to temporary labor certifications issued as a result of the H-2A applications.

**(11) If the Complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

No violation of 18 U.S.C. § 1962(a) alleged.

**(12) If the Complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

No violation of 18 U.S.C. § 1962(b) alleged.

**(13) If the Complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:**

**(A) State who is employed by or associated with the enterprise; and**

Gregory Carr was the owner and manager of Intrepid, Inc. Merrit Belk Harris, Zachary Harris and Garold Dungy performed work on behalf of C.O.C. Placement in connection with the preparation and submission of H-2A application materials between 2018 and 2025. Their names appear on correspondence and filings associated with the RICO enterprise's activities. Merritt Belk Harris and Zachary Harris are believed to be the current co-owners of C.O.C. Placement. Garold Dungy is the former owner of C.O.C. Placement.

**(B) State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

RICO Defendant Gregory Carr is a "person" within the meaning of 18 U.S.C. § 1961(3). Gregory Carr is not the enterprise under § 1962(c).

**(14) If the Complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

Plaintiffs allege that Gregory Carr conspired with the Intrepid Inc–C.O.C. Placement enterprise to conduct and participate in the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). From 2018 through 2025, Gregory Carr and his co-conspirators agreed that Intrepid Inc. and C.O.C. Placement would submit false and misleading H-2A labor certification applications and recruitment reports to the U.S. Department of Labor to conceal the employment of domestic workers at sub-AEWR wages and to obtain temporary foreign labor certifications allowing the importation of foreign workers for employment on Carr's farming operations.

Gregory Carr knowingly directed C.O.C. Placement to prepare and transmit the fraudulent filings and caused Intrepid Inc. to serve as the nominal employer of record. Each participant understood and intended that these misrepresentations would secure federal labor certifications under false pretenses and thereby suppress the wages and job opportunities of U.S. workers, including Plaintiffs.

The conspiracy operated through repeated mailings, electronic submissions, and recruitment communications, all of which furthered the enterprise's unlawful objectives. Gregory Carr, Intrepid Inc., and C.O.C. Placement shared a continuing understanding of the essential nature and scope of the plan, which was to deceive the Department of Labor and sustain a dual-wage workforce over successive agricultural seasons.

**(15) Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

The predicate acts of mail fraud, wire fraud, and fraud in foreign labor contracting directly caused Plaintiffs' loss of income and employment opportunities. Through the false recruitment reports and certifications submitted by the Intrepid–C.O.C. enterprise, Gregory Carr obtained federal approval to employ foreign H-2A workers while concealing his intent to continue using domestic workers under inferior terms. These misrepresentations to the DOL, namely falsely claiming that all prior U.S. workers had been contacted regarding the job opportunities described in the H-2A applications, that none were available, and that all workers would be paid at least the AEWR, enabled Gregory Carr to structure his labor force in a way that excluded Plaintiffs from employment opportunities and wages as described in the H-2A applications.

Absent those false certifications, Gregory Carr would have been required either to hire Plaintiffs and other available U.S. workers on the regulatory-required terms, thereby limiting and possibly extinguishing the need for employment of H-2A workers. The fraud thus directly allowed the very conditions that caused the harm suffered by Plaintiffs. They were passed over for certified positions, paid below the required rate, offered fewer hours of work, and discharged early in the season. Plaintiffs' injuries of lost wages and employment opportunities were the direct and proximate result of the misrepresentations that sustained the scheme.

**(16) List the actual damages for which Defendant is allegedly liable.**

Plaintiffs seek damages from Gregory Carr consisting of payment of additional wages due at the AEWR and compensation for employment opportunities denied them in an amount to be determined through discovery, subject to trebling pursuant to 18 U.S.C. § 1964(c).

**(17) List all other federal causes of action, if any, and provide citations to the relevant statute(s).**

In addition to the RICO claims, Plaintiffs assert the following federal causes of action: (1) violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") provisions 29 U.S.C. § 1832(a) and (c); and (2) in the alternative to the RICO claims, violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

**(18) List all pendent state claims, if any.**

Plaintiffs assert a pendent state-law claim for breach of contract under Mississippi law.

**(19) Provide any additional information that you feel would be helpful to the Court in considering your RICO claim.**