IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| **MICHAEL ANTHONY NASH,** ) | |
| **JIMMY SHAW, VINNIE CASON,** ) | |
| **GRANT LEWIS,** and **CHARLESTON** ) | |
| **TAURVONTA HARRIS,** ) | |
| ) | |
| PLAINTIFFS, ) | |
| ) | CIVIL CAUSE NO. |
| *vs.* ) | 4:25-CV-059-DMB-JMV |
| ) | |
| **GREGORY CARR,** ) | |
| ) | |
| DEFENDANT. ) | |
| _____) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION
TO FILE SECOND AMENDED COMPLAINT**

Defendant opposes Plaintiffs' motion to file a second amended complaint (ECF 35) for the reasons set forth herein.

Plaintiffs filed their original complaint herein on May 15, 2025. ECF 1. Plaintiffs alleged their claim against Defendant under the Racketeer Influenced and Corrupt Organizations Act ("RICO") when they filed their first amended complaint on September 4, 2025. ECF 21, pp. 2, 23-26.

Defendant filed his answer to Plaintiffs' amended complaint on September 18, 2025. ECF 29. The answer to the amended complaint included the following affirmative defense:

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims brought against Defendant under RICO are due to be dismissed because Plaintiffs failed to file a RICO statement, as mandated by Local Uniform Civil Rule 83.8, before they asserted their RICO claims against Defendant.

STEPHEN A. BRANDON
ATTORNEY AT LAW
1300 U.S. HIGHWAY 51 NORTH
MADISON, MISSISSIPPI 39110
(601) 954-8599

ECF 29, p. 22.

The deadline in this case for filing motions for "joinder of parties or amendments to the pleadings," under the Court's case management order, was October 27, 2025. ECF 25, p. 4. Defendant intended to file a motion to dismiss Plaintiffs' RICO claim for being non-compliant with L.U. Civ. R. 83.8 after this deadline passed, but Plaintiffs filed their motion seeking leave to file their second, amended complaint on October 27, 2025 (39 days after Defendant put them on notice of the deficiencies associated with their original RICO claim). Notwithstanding, Defendant now urges that Plaintiffs' motion to file a second, amended complaint is due to be denied because (1) the proposed "enhanced" RICO claim does not comply with L.U. Civ. R. 83.8 or with the applicable, heighted Rule 9(b) pleading standard; (2) Plaintiffs' proposed second amendment to their complaint would be futile because neither the original nor the "enhanced" RICO claim identify a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5); and (3) allowing Plaintiffs to prosecute a RICO claim against Defendant in this lawsuit – which is, essentially, a lawsuit seeking damages relating to wage differentials between local and H-2A farm workers – will completely recharacterize the litigation, and will introduce undue delay, add unnecessary expense and complexity, and impose unjustifiable burdens upon the parties.

Plaintiffs aver that their proposed, second amended complaint purports to (1) include "a RICO Statement as procedurally required by L.U. Civ. R. 83.8, (2) adds a conspiracy claim under 18 U.S.C. § 1962(d), (3) refines and clarifies the definition of the alleged enterprise under 18 U.S.C. § 1961(4) to ensure accuracy and consistency with Plaintiffs' intended allegations, and (4) substitutes the real names of individuals identified

STEPHEN A. BRANDON
ATTORNEY AT LAW
1300 U.S. HIGHWAY 51 NORTH
MADISON, MISSISSIPPI 39110
(601) 954-8599

through discovery for previously used nicknames." ECF 36, p. 1. With regard to their RICO claim, Plaintiffs urge that "[i]t <u>does not assert any new claims</u>, <u>predicate acts</u>, or legal theories. Rather, it restates the same facts already alleged in the operative complaint to facilitate the Court's management and evaluation of the RICO claims. The Case Statement serves a procedural function only and imposes no new burdens on Defendant." (Emphasis added.) These assertions are not accurate, because the proposed amendments do, in fact, include a new conspiracy claim which alleges "that the same <u>defendants</u> agreed to participate in the same pattern of racketeering activity already described in the operative complaint." ECF 36, p. 2. The use of the word "defendants" is telling, because Plaintiffs seek to expand their RICO claim against the only defendant in this case, Greg Carr -- a sole-operator of small farms in the Mississippi Delta – while simultaneously also accusing a third party, C.O.C. Placement Services of Mississippi, of engaging in racketeering. No additional proposed defendants -- including the alleged co-conspirator and member of the putative RICO "enterprise," C.O.C. Placement Services (which allegedly assisted Carr in "recruiting, soliciting, hiring, and furnishing seasonal agricultural labor" in violation of various federal regulations, ECF 35, pp. 27, 36) – are, in fact, named in the proposed, second amended complaint.

    It is true that courts "should freely give leave [to amend] when justice so requires." Fed R. Civ. P. 15(a)(2). "But 'leave to amend is by no means automatic.'" *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 484 (5th Cir. 2021) (quoting *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993)). Indeed, a court may deny leave to amend where the amendment would be subject to dismissal, *Johnson v. Harris Cnty.*, 83 F.4th 941, 947 n.8

(5th Cir. 2023), or when the RICO claim itself is implausible, fails to meet the applicable heightened Rule 9(b) pleading standard, or is futile (as is the case here).

## II.  LAW

### A.  RICO pleading.

A successful RICO claim alleges "(1) the identification of a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise." *Burney v. Allen Auto., Inc.*, 2024 U.S. Dist. LEXIS 174351, *18-*19 (S.D. Miss. 2024), citing *Nix v. Major League Baseball*, 62 F.4th 920, 931 (5th Cir. 2023); *see also Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228-229 (5th Cir. 2003) ("Any civil RICO claim rests on the following elements: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct or control of an enterprise.").  "'A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.'" *Burney, id.*, citing *K&F Rest. Holdings, Ltd. v. Rouse*, Civil Action No. 16-293, 2018 U.S. Dist. LEXIS 123154, 2018 WL 3553422, at *17 (M.D. La. July 24, 2018), *aff'd on other grounds*, 798 F. App'x 808 (5th Cir. 2020) (quoting *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523-24 (5th Cir. 2016)); *see also C&C Cartage, Inc. v. Cont'l Indem. Co.*, 2024 U.S. Dist. LEXIS 57612 (S.D. Miss. 2024) ("The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it unlawful for "any person employed by or associated with any enterprise engaged in […] interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt." *Burney, id.,* citing 18 U.S.C. § 1962(c). RICO further makes it unlawful to conspire to violate § 1962(c) of the Act. *Id.*, § 1962(d). To successfully state a claim under § 1962(c), Plaintiffs must prove the existence of an enterprise and a pattern of racketeering. *Montesano v. Seafirst Com. Corp.*, 818 F.2d 423, 424 (5th Cir. 1987) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)). "The predicate criminal acts can be violations of either state or federal law." *Burney, id.* (citing *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009)).

### B. The heightened pleading standard.

RICO claims must allege wrongs with sufficient particularity to constitute the RICO "predicate act of [...] fraud" consistent with Rule 9(b). *Burney, id.*, citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992); *Nix*, 62 F.4th at 931. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Burney, id.*, citing Fed. R. Civ. P. 9(b); *see also EMET, LLC v. CDC Enters., LP*, 2024 U.S. Dist. LEXIS 147682, *9 (5th Cir. 2024) (the pleading rules in civil cases generally require a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2); however, the heightened pleading rule applies in civil RICO claims prosecuted in the Fifth Circuit, which requires Plaintiffs to "state with particularity the circumstances constituting fraud"). While "[w]hat constitutes particularity will necessarily differ with the facts of each case," the Fifth Circuit has held that "Rule 9(b) requires the <u>who, what, when, where, and how</u> to be laid out." *Burney, id.*, citing *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 714, 724 (5th Cir. 2003) (citations omitted) (emphasis added).

Therefore, to prevail upon their civil RICO claim Plaintiffs' complaint <u>must have pled enough facts to state a plausible claim for relief</u>. *Shannon v. Ham*, 639 Fed. Appx. 1001, 1003 (5th Cir. 2016) (emphasis added), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). "Where a complaint pleads facts that are <u>merely consistent with a defendant's liability</u>, it stops short of the line between possibility and plausibility of entitlement to relief." *Shannon, id*. (citation omitted) (emphasis added). Determining whether a set of facts has crossed the line from possible or conceivable to plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Shannon, id.* (citation omitted). To sufficiently plead a civil RICO claim, the complaint must contain sufficient factual matter, which, if "accepted as true, states a claim that is plausible <u>on its face</u>. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *EMET, id.*, citing *Henley v. Biloxi H.M.A., L.L.C.*, 48 F.4th 350, 353 (5th Cir. 2022) (emphasis added) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "While the court must accept the facts in the complaint as true, it will 'not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *EMET, id.*, citing *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *EMET, id.*, citing *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) (citation omitted).

In addition to the predicate criminal acts, Plaintiffs are required to show that the RICO predicate offense "was the proximate cause" of their injuries. *Shannon v. Ham*,

639 Fed. Appx. 1001, 1003 (5th Cir. 2016), citing *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9, 130 S. Ct. 983, 989, 175 L. Ed. 2d 943 (2010). In the RICO context, proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Shannon, id.*, (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 1318, 117 L. Ed. 2d 532 (1992)). That relationship cannot be "too remote," "purely contingent," or "indirect." *Id.* (brackets omitted). *Shannon, id.* (quoting *Holmes*, 503 U.S. at 271, 112 S. Ct. at 1319). For these reasons, a district court has the wide discretion to deny Plaintiffs' motion to amend their complaint to include "enhanced" RICO claims on any grounds raised by the parties and supported by the record. *Raj v. La. State. Univ.*, 714 F.3d 322, 330 (5th Cir. 2013) (quoting *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007)).

**C. Mail and wire fraud (generally).**

To specify a predicate act of either mail or wire fraud, Plaintiffs must meet the heightened standard of Rule 9(b). *Arroyo v. Oprona, Inc.*, 2017 U.S. Dist. LEXIS 143071, *5-*6 (S.D. Tex. 2017), citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). Rule 9(b) requires that a plaintiff must specify the fraudulent statement, identify the speaker, state when the statement was made, and explain why the statement was fraudulent. *Arroyo, id.*, citing *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010).

**D. Mail fraud (specific elements in a RICO claim).**

In a RICO case, mail fraud occurs when a person "for the purpose of executing [a fraudulent] scheme [ ] or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the

STEPHEN A. BRANDON
ATTORNEY AT LAW
1300 U.S. HIGHWAY 51 NORTH
MADISON, MISSISSIPPI 39110
(601) 954-8599

Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, ... ." *EMET, LLC v. CDC Enters., LP*, 2024 U.S. Dist. LEXIS 147682, *12-*13 (5th Cir. 2024)(citing18 U.S.C. § 1341).  Allegations of mail fraud must comport with the heightened pleading standard, which requires particulars of "time, place, and contents of the fraudulent representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.*

### E.  Wire fraud (specific elements in a RICO claim).

Wire fraud occurs when a person "transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing [a] scheme [to defraud]." *EMET, LLC* at *14 (citing 18 U.S.C. § 1343).  Plaintiffs' factual allegations fall far short of the specificity required for a plausible RICO claim predicated on wire fraud when they merely provide conclusory allegations (*e.g.*, "Defendants used mailings and wires to defraud Plaintiffs" and "Defendants sent interstate wire and mail to further their scheme to defraud Plaintiffs").  *Id.*

### F.  Futility.

The futility of a proposed amendment to a pleading is determined under Rule 12(b)(6) standards; in other words, an amendment is futile if it would fail to state a claim upon which relief could be granted.  *Id.* at 873.  Because Plaintiffs cannot add anything

to their pleadings at this stage of the litigation which would save their RICO claim (for the reasons discussed herein), it would be futile to grant leave to amend. *See Legate v. Livingston*, 822 F.3d 207, 211-12 (5th Cir. 2016).

### III. ARGUMENT AND APPLICATION OF LAW TO PLAINTIFFS' ALLEGED "ENHANCED" PROPOSED RICO CLAIM

**A. Plaintiffs' proposed RICO claim is not plausible because the alleged racketeering activities do not constitute predicate offenses.**

Plaintiffs' RICO claim is predicated upon following asserted acts:

> The predicate acts alleged (mail fraud, wire fraud, and fraud in foreign labor contracting), constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5). From 2018 through 2025, Gregory Carr, through the Intrepid Inc.–C.O.C. Placement enterprise, repeatedly engaged in materially identical fraudulent conduct: preparing, signing, and transmitting false H-2A applications and recruitment reports to the U.S. Department of Labor. Each year's application was a new instance of racketeering activity.

ECF 35, p. 41. Additionally, Plaintiffs intend to allege in their proposed, second amended complaint that:

> 105. Gregory Carr intentionally lied in the recruitment reports described in Paragraph 105 and when signing the declaration under penalty of perjury as described in Paragraph 106. Gregory Carr had not conducted the required recruitment of U.S. workers and had no intention to continue conduct the required recruitment procedures or to offer and provide to U.S. workers wages, benefits, and job conditions no less than those that he was offering and providing his H-2A workers. C.O.C. Placement and Intrepid Inc. knew or should have known that these statements by Carr were false but nonetheless conspired with Carr to submit these false statements to the DOL in order <u>to allow Carr to obtain temporary labor certification for the employment of H-2A workers and maintain a workforce of U.S. workers under inferior terms</u>. (Emphais added.)
>
> 106. Gregory Carr's H-2A applications, with the signed declaration under penalty of perjury and the positive recruitment reports, were submitted to the DOL electronically and/or via post mail.

> 107. The actions described in Paragraph 107 constituted "racketeering activity" as defined in 18 U.S. Code § 1961(1) because there were acts which were indictable under any of the following provisions of title 18, to wit, Section 1341 (mail fraud) or Section 1343 (wire fraud), and Section 1351 (fraud in foreign labor contracting).

ECF 35, p. 29 (emphasis added). The injuries caused by Carr's claimed misconduct are exclusively alleged to redound to the detriment of Plaintiffs, and not to the foreign workers who were hired as H-2A workers, *viz.*:

> By concealing that plan and directing Intrepid, Inc. and C.O.C. Placement to prepare and transmit false filings through the mails and electronic systems, Gregory Carr conducted the enterprise's affairs through a pattern of mail fraud (18 U.S.C. § 1341), wire fraud (§ 1343), and fraud in foreign labor contracting (§ 1351) to exploit the H-2A program, suppress local wages, and injure Plaintiffs through lost AEWR-level pay and job opportunities.

ECF 35, p. 55 (emphasis added).

These proposed allegations are not, and cannot be, true upon their face – and hence the Court cannot draw the reasonable inference that the defendant is liable for the misconduct alleged -- because making false statements in H-2A applications does not constitute a predicate offense under RICO as to Plaintiffs. *See* 18 U.S.C. § 1961(1) (enumerating the crimes that may comprise a "racketeering activity"). In point of fact, Plaintiffs' reliance upon Section 1351 for the creation of a predicate to prosecute a RICO claim against Defendant is wholly and demonstrably misplaced and is squarely contravened by the statute at issue and by applicable case law. While it is true that violations of Section 1351 *can* constitute a predicate offense under Section 1961(1), the "fraud in foreign labor contracting involves misrepresentations to the **foreign worker**," not to the **U.S. government** or to **Plaintiffs**. *See Martinez v. Mobis Ala.*, LLC, 739 F. Supp. 3d 1152, 1217 (N.D. Ga. 2024) ("Fraud in foreign labor contracting 'focuses on

alleged misrepresentations <u>to the foreign worker</u>," [citation omitted] ([ ]18 U.S.C. § 1351(a)) ("Whoever knowingly and with intent to defraud recruits, solicits, or hires a person outside the United States or causes another person to recruit, solicit, or hire a person outside the United States, or attempts to do so, for purposes of employment in the United States by means of materially false or fraudulent pretenses, representations or promises regarding that employment shall be fined … or imprisoned …, or both."), while visa fraud "covers, in part, situations where the defendant misrepresents material facts on immigration forms submitted to the government[.]") (emphasis added).)

Plaintiff has characterized the alleged acts of Carr and C.O.C. Placement Services as mail and wire fraud; however, "merely relabeling" alleged violations of Section 1351 as mail and wire fraud "do not work" in this case. *See Arroyo v. Oprona, Inc.*, 2017 U.S. Dist. LEXIS 143071, *6-*7 (S.D. Tex. 2017) (plaintiff's characterization of alleged acts of tax evasion, making a false statement on a tax return, and conspiracy to defraud the United States did not constitute predicate offenses under the RICO statute, and "merely relabeling tax fraud as mail and wire fraud" did not "work" as predicate offenses under RICO).

In *Carmen v. Health Carousel, LLC*, 2023 U.S. Dist. LEXIS 139403 (S.D. Ohio 2023), the putative immigrant class members were employed by Health Carousel. Health Carousel, a recruiting and staffing company, enlisted foreign nurses, primarily from the Philippines, to work in healthcare facilities across the United States. *Carmen* at *3. While still abroad, the nurses signed employment agreements with Health Carousel which included breach-of-contract liquidated damages provisions. After the nurses arrived in

the U.S., Health Carousel required them to comply with an employment handbook which materially modified the liquidated damages provision contained in the original employment contract. Specifically, the employment contract signed by the nurses while they were still abroad provided that any claim for liquidated damages would be settled "amicably," whereas the employee handbook – which was not provided to the nurses until they arrived in the U.S. for their job assignments – provided that any amount of liquidated would be "due immediately and in full on or before the last day" of the nurse's employment. Additionally, the handbook indicated that Health Carousel would file suit against, and seek damages from, any nurse who breached the employment contract and failed to pay liquidated damages. Finally, the handbook warned the nurses that if they left "the country, Health Carousel [could] still obtain a judgment that [would] be enforceable abroad." *Carmen* at \*7-\*11. In explaining why the putative class plaintiffs had successfully pled plausible RICO claims against Health Carousel, the court <u>specifically and precisely</u> noted that a claim for "[f]raud in foreign labor contracting focuses on alleged misrepresentations <u>to the foreign worker</u>," *id.* (citing 18 U.S.C. § 1351(a)). *See Carmen, id.* ("Whoever knowingly and with intent to defraud recruits, solicits, or hires <u>a person outside the United States</u> or causes another person to recruit, solicit, or hire <u>a person outside the United States</u>, or attempts to do so, for purposes of employment in the United States by means of materially false or fraudulent pretenses, representations or promises regarding that employment shall be fined . . . or imprisoned . . . , or both."), while <u>visa fraud</u> "on the other hand, covers, in part, situations where the defendant misrepresents material facts on immigration forms <u>submitted to the government</u>.") (emphasis added)).

Because the misconduct alleged against Carr and C.O.C. Placement services relates to the alleged injuries to the <u>local farm workers</u> – *i..e.*, Plaintiffs – and <u>not</u> to any alleged injuries on the part of the <u>foreign workers</u>, Plaintiffs' proposed RICO claim fails to state a plausible claim against Carr for any indictable offense under 18 U.S.C. § 1961(5). Consequently, Plaintiffs cannot establish the existence of an enterprise and a pattern of racketeering, and therefore Plaintiffs' motion to amend their amended complaint to include a RICO violation which purports to (now) comply with L.U. Civ. R. 83.8 is due to be denied.

**B. Plaintiffs' proposed RICO claim is not plausible because the alleged misconduct did not lead directly to Plaintiffs' alleged injuries.**

The central question of RICO proximate-cause analysis is "whether [Defendant's] alleged violation[s] led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006). To successfully satisfy the proximate-cause requirement, there must be "some direct relation between the injury asserted and the injurious conduct alleged," and links that are "too remote, purely contingent, or indirect [are] insufficient." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010) (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 271, 274, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) ("The connection between racketeering activity and the injury can be neither remote, purely contingent, nor indirect.").

In the instant matter, Plaintiffs' proposed RICO claim alleges that Carr's purported alter ego business entity, Intrepid, Inc., conspired with C.O.C. Placement Services to violate the Agricultural Worker Protection Act ("AWPA"), which resulted in

lower wage rates to paid to Plaintiffs. (Carr's H2-A applications "falsely claimed that that his U.S. employees from prior seasons had been contacted and offered work, and that no U.S. workers had applied for or were available to fill the positions and that both domestic and foreign workers would receive at least the Adverse Effect Wage Rate (AEWR). In truth, Gregory Carr failed to contact all of his previous domestic workers regarding the job opportunities described in his H-2A applications. Although he had already arranged to hire several domestic workers, including Plaintiffs, Carr intended to pay them wages below the AEWR which was paid to his H-2A workers." ECF 35, p. 35.) Filing (alleged) false documents with a government agency <u>cannot be shown</u>, and <u>cannot be plausibly alleged</u>, to have directly caused an injury to Plaintiffs (such as the suppression of their wage rates as compared to the wage rates of the foreign, H-2A workers). Such a correlation is simply too remote and too speculative to withstand scrutiny. Additionally, the alleged injury (i.e., Plaintiffs' reduced wage rates as compared to those of the H-2A workers) cannot be shown, and cannot be plausibly alleged, to have resulted from an "enterprise" between C.O.C. Services, Carr, Intrepid, Inc., or any combination thereof, for the same reason. And for reasons previously discussed, Plaintiffs' proposed RICO claim cannot succeed because it purports to allege an indictable offense with regard to Carr's treatment of <u>Plaintiffs</u>, in violation of 18 U.S.C. § 1351(a), and not with regard to Carr or Intrepid, Inc.'s treatment of the <u>foreign workers</u>. Because the alleged Section 1351 violations are neither plausible nor viable; and because Plaintiffs RICO claim is predicated upon the assertion that Carr's submission of falsified documents to the U.S. government led to the establishment of lower wage rates for Plaintiffs (instead of lower wage rates for the foreign workers); and because Plaintiffs'

claims that Carr's "alleged violations led directly to the [P]laintiff's injuries" fail to establish that "some direct relation between the injury asserted and the injurious conduct alleged" exists, then such links are "too remote, purely contingent, or indirect" to be sufficient, per *Anza v. Ideal Steel Supply Corp.* Accordingly, Plaintiffs' motion to file a second amended complaint to include an enhanced RICO claim against Defendant is due to be denied.

**C. Plaintiffs' proposed RICO claim fails to meet the Rule 9(b) heightened pleading standard.**

Even if Plaintiffs' RICO claim did not fail under the above analysis, it is also deficient and subject to dismissal for failure to comply with Fed.R.Civ.P. 9(b)'s requirement that claims of fraud be pled with specificity. Additionally, Defendant urges that if Plaintiffs are allowed to file their proposed second, amended complaint against Defendant, it will not be compliant with RICO's underlying purpose. As Judge Oldhame observed, in his dissent in *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958 (5th Cir. 2019):

> "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). The statute punishes defendants with treble damages, attorney's fees, and the "stigmatizing" label "racketeer." Ibid. That alone gives even "spurious claims" tantalizing "in terrorem settlement value." *Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 747 F.2d 384, 399 n.16 (7th Cir. 1984), *aff'd*, 473 U.S. 606, 105 S. Ct. 3291, 87 L. Ed. 2d 437 (1985).
>
> But that's not the worst of it. "RICO has been interpreted so broadly that it has been used more often against respected businesses with no ties to organized crime, than against the mobsters who were the clearly intended target of the statute." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 526, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) (Powell, J., dissenting); *see also id.* at 499 (majority op.) ("It is true that private civil actions under the statute are being brought almost solely against [respected businesses], rather than against the archetypal, intimidating mobster."). The predicate acts for civil RICO are so broad that racketeering claims are de riguer in commercial litigation. In the words of Abner Mikva—who voted against RICO as a member of Congress before applying it as a judge on the D.C. Circuit—civil RICO is "a weapon against legitimate businessmen in ordinary commercial disputes. The civil RICO count today has become boilerplate in commercial lawsuits."

Abner Mikva & G. Robert Blakey, RICO and its Progeny: Good or Bad Law?, 12 Notre Dame J.L. Ethics & Pub. Pol'y 369, 372 (1986).

*Waste Mgmt* at 980.

The worst of Judge Oldhame's fears are realized in the present lawsuit. As is clearly established above, Plaintiffs have falsely accused Carr – who is the sole operator of several small farms located on land which he rents from land owners in the Mississippi Delta – of being a *criminal* who engaged in *indictable acts*, in violation of Section 1341, and for engaging in a *criminal enterprise* with C.O.C. Placement Services, in relation to alleged wage differentials between Plaintiffs and Carr's H-2A workforce. Surely it goes without saying that <u>this</u> is the type of situation in which Rule 9(b)'s heightened pleading standard <u>must</u> be strictly applied and enforced. In their proposed, second amended complaint, Plaintiffs simply state — with no factual support — that Defendant engaged in "mail fraud and bank fraud in violation of 18 USC section 1341, 1343 and 1344 to support a fraudulent scheme." Plaintiffs' proposed and "enhanced" RICO claims fails to establish that any relief from the alleged misconduct is conceivable, much less plausible, because the relationship between the alleged misconduct and Plaintiffs' alleged injuries is not specified with sufficient factual detail. *See Gonzalez v. Bank of Am. Ins. Services*, Inc., 454 F. App'x 295, 301 (5th Cir. 2011) (finding dismissal under Rule 9(b) appropriate where the "amended complaint contains almost no allegations about events or actions affecting [the plaintiff ].") Rule 9(b) unequivocally requires that the complaint include the particulars of "who, what, when, where, why, and how the false statements were made and to whom they were made." *Taylor v. Crye-Leike, Inc.*, 2000 U.S. Dist. LEXIS 9876, *7 (S.D. Miss. 2000). This, plaintiffs have failed to do. Plaintiffs contend that Plaintiffs were "injured when Gregory Carr, after receiving temporary labor certification, maintained a mixed

workforce of H-2A and domestic laborers but paid domestic workers below the Adverse Effect Wage Rate (AEWR) while compensating H-2A workers at or above the AEWR. As a result, Plaintiffs and other U.S workers were underpaid and local wage levels were suppressed." ECF 35, p. 36. But this case is not about "other workers," nor is about speculative, macroeconomic theories which implicate the remote or contingent possibility that Carr's alleged submission of falsified documents to the U.S. government resulted in "suppressed" local wage levels, or "suppressed" wage rates for Plaintiffs -- particularly when Plaintiffs do not provide specific detail with regard to the number of actual hours worked by them while in Carr's employ; the dates upon which the hours were worked; the actual wages paid to those workers upon those dates, including bonuses and other emoluments/benefits; a description of the actual work performed by them and the actual, comparable work performed by the H-2A workers; how Carr's alleged submission of fraudulent documents to the U.S. government caused <u>actual harm</u> to Plaintiffs, and the dates upon which each, actual harm was visited upon each, individual Plaintiff, along with the nature/degree of the harm(s); or the "who, what, when, where, and why" of how Carr and Intrepid, Inc. conspired with C.O.C. Placement Services to engage in an "enterprise" to <u>specifically</u> cause harm to Plaintiffs (in the form of reduced wages). What are the specific dates of the alleged acts of wire fraud? What are the specific dates of the alleged acts of mail fraud? Which statements did Carr use the U.S. Postal Service or a telephone to create a fraudulent scheme which actually harmed Plaintiffs? – and what, exactly, were those statements, and when were they made? How did these acts of wire and mail fraud result in lower wage rates to Plaintiffs? Obviously, the <u>dates</u> of Carr's/Intrepid's alleged fraudulent acts are not specified in the proposed, second amended complaint. Plaintiffs'

reliance, or the reliance of third parties, upon Carr's/Intrepid's submission of documents <u>on specific dates</u> which correlates with, or resulted in, <u>specific criminal acts</u> which resulted in reduced pay rates <u>to each, individual Plaintiff</u> with regard to <u>his actual, specific wage rates upon those dates</u>, are not provided. The <u>actual false statements</u> allegedly made by Carr to C.O.C. Placement Services, and which allegedly caused <u>direct injuries to Plaintiffs</u>, are not specified by Plaintiffs. And on … and on … and on. To say that Plaintiffs have failed to meet the Rule 9(b)'s heightened pleading standard is an understatement. For this reason – and in addition to (or exclusive of) the other reasons set forth herein – Plaintiffs' motion for leave to file a second, amended complaint with an enhanced RICO claim should be denied.

**D. Plaintiffs' proposed amended RICO claim, if allowed to proceed, will add undue delay, complication, burden, and expense in this litigation.**

Federal Rule of Civil Procedure 1 cautions that the "rules govern the procedure in all civil actions and proceedings in the United States district courts," and that they "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." This case is about <u>damages</u> based upon alleged impermissible differentiation in wage rates. Yet Plaintiffs are attempting to take this labor case and transform it, using false assertions, into a RICO case. If the Court allows this allowed to occur, it will completely recharacterize the case, and the proposed amendment, if authorized by the Court, will add undue delay, complications, burdens, and expense to this litigation.

## CONCLUSION

Plaintiffs have to meet the burden of proof in this case, and they carry the responsibility of pleading a RICO claim against Defendant which is plausible and which

comports with the federal pleadings standards. For the reasons stated herein, it is clear that Plaintiffs have not, and that Plaintiffs cannot, meet these obligations. They have not been diligent in alleging specific facts against Defendant which establish that Defendant engaged in an enterprise of criminal activity which violates the RICO statute. It was their duty to plead facts which support their RICO claim at the outset of this case, and not to wait until the last minute to do so. (And they certainly should not subsequently be allowed to assert that they "need to conduct discovery" in this case to support their proposed RICO claim, when it was their obligation to have such facts in hand at the time of the initiation of this litigation.) Accusing a party of engaging in criminal misconduct and of being a racketeer is a <u>gravely serious matter</u>, which is why the Court requires strict compliance, from the very beginning, with Local Rule Local Uniform Civil Rule 83.8. Plaintiffs filed their original complaint on May 15, 2025. They had a responsibility <u>then</u> to make sure that they had the necessary facts to plead a RICO claim against Defendant, and to do so in a manner which complies with Rule 9(b). But they did not do so, and they should not be allowed to now completely recharacterize this case in a manner which will add undue burdens upon the parties, unnecessary complexity to the pleadings, and delay to these proceedings. Defendant respectfully urges that Plaintiffs' motion for leave to file a second, amended complaint should be denied.

     RESPECTFULLY SUBMITTED ON THIS DATE: November 12, 2025.

                             /s/ Steve Brandon
                             Stephen A. Brandon (MB #8655)
                             **COUNSEL FOR GREGORY CARR**

OF COUNSEL:

Stephen A. Brandon
Attorney at Law
1300 U.S. Highway 51 North
Madison, Mississippi 39110
(601) 954-8599
Facsimile: (601) 853-2878

## CERTIFICATE OF SERVICE

I, STEPHEN A. BRANDON, hereby certify that I have this day served upon all counsel of record a copy of the foregoing document, <u>via email only</u>, to wit:

Robert B. McDuff, Esq.
767 North Congress Street
Jackson, Mississippi 39202
*rbm@mcdufflaw.com*

Marion Lourdes Delaney, Esq.
Texas RioGrande Legal Aid, Inc.
311 Plus Park Blv Ste #135
Nashville, Tennessee 37203
*mdelaney@trla.org*

Teresa Pulaski, Esq.
Southern Migrant Legal Services
604 Russell St. Ste Apt 104
Nashville, Tennessee 37206
*teresa.c.pulaski@gmail.com*

DONE ON THIS DATE: November 12, 2025.

/s/ Steve Brandon
Stephen A. Brandon