IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MICHAEL ANTHONY NASH, JIMMY SHAW
VINNIE CASON, GRANT LEWIS, CHARLESTON
and TAURVONTA HARRIS                                                          PLAINTIFFS

v.                                                              CIVIL ACTION NO. 4:25-cv-59-JMV

GREGORY CARR                                                                 DEFENDANT

**ORDER DENYING MOTION TO AMEND**

This matter is before the Court on Plaintiffs' motion for leave to file a second amended complaint [Doc. 35]. The motion is now fully briefed, and the Court is prepared to rule. For the reasons that follow, the undersigned finds that the motion [Doc. 35] shall be DENIED.

**Background**

This action was filed on May 15, 2025, by five individual Black American farm laborers who assert a claim for relief under the Migrant and Seasonal Agricultural Worker Protection Act[1] ("AWPA"), a state law breach of contract claim, and a 42 U.S.C. § 1981 claim. [Doc. 1]. On September 4, 2025, Plaintiffs amended their complaint as a matter of right, adding a fourth claim under the Racketeer Influenced and Control Act. ("RICO"). [Doc. 21]. Defendant filed his answer to the amended complaint on September 18, 2025, asserting, as concerns the RICO claim, among other defenses, that Plaintiffs failed to have attached to the complaint a RICO statement in

---

[1] The AWPA was enacted to protect the rights of migrant and seasonal agricultural workers in the United States. 29 U.S.C. § 1801. Among other things, the AWPA requires agricultural employers to pay farmworkers the full amount of the wages due to them, including, when applicable, wages due them under the regulations governing the H-2A worker program. The AWPA also prohibits agricultural employers from violating without justification the working arrangements that they enter into with farmworkers who they employ.

1

compliance with Local Rule 83.8, and Plaintiffs failed to state a RICO claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 29].

On October 27, 2025, the last day to timely file motions to amend in accordance with the case management order [Doc. 25], Plaintiffs sought leave to file a second amended complaint. [Doc. 35]. In the memorandum in support of Plaintiffs' motion for leave to file a second amended complaint, Plaintiffs describe the proposed changes made to the complaint as follows:

> The proposed second amended complaint includes a (1) RICO Statement as procedurally required by *L.U. Civ. R. 83.8*, (2) adds a conspiracy claim under 18 U.S.C. § 1962(d), (3) refines and clarifies the definition of the alleged enterprise under 18 U.S.C. § 1961(4) to ensure accuracy and consistency with Plaintiffs' intended allegations, and (4) substitutes the real names of individuals identified through discovery for previously used nicknames.

[Doc. 36] at 1.

Defendant opposes the motion to amend [Doc. 42], arguing that amendment would be an act in futility because, even inclusive of the proposed second amendments, no RICO claim is plausibly stated, nor could it be, even taking into account Federal Rule of Civil Procedure 15's liberal standard for allowance of amendments.[2]

**The Law**

Federal Rule of Civil Procedure 15(a)(2) notes that leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the rule is "by no means automatic." *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981), *cert. denied*, 454 U.S. 1098 (1981); *see also Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982) (citation omitted). On the contrary, the district court has discretion in determining

---

[2] Amendments proposed pursuant to Rule 15 may be denied for futility–itself a function of whether the claim states a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6).

2

whether to allow amendments of pleadings. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). The Fifth Circuit examines five factors to determine whether to grant a party leave to amend a complaint: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). An amendment is considered futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). The "futility standard" is "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id*.

To sufficiently plead a civil RICO claim pursuant to 12(b)(6), the complaint must contain sufficient factual matter, which, if "accepted as true, states a claim that is plausible on its face." *Henley v. Biloxi H.M.A., L.L.C.*, 48 F.4th 350, 353 (5th Cir. 2022). In particular, a RICO plaintiff must assert sufficient facts to establish the following elements: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct or control of an enterprise. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228-229 (5th Cir. 2003). A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity. *St. Germain v. Howard,* 556 F.3d 261, 263 (5th Cir. 2009).

In addition to the predicate criminal acts, Plaintiffs are required to show that the RICO predicate offense "was the proximate cause" of their injuries. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). In the RICO context, proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

As discussed below in more detail, in the instant case, Plaintiff asserted in the first amended complaint, and reasserts in the proposed second amended complaint, that Defendant engaged in the following predicate acts: mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and fraud in foreign labor contracting (18 U.S.C. § 1351).

18 U.S.C. § 1341 states, in relevant part, that mail fraud occurs when:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343 states, in relevant part, that wire fraud occurs when:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1351 states, in relevant part, that fraud in foreign labor contracting occurs for work in the United States when:

> Whoever knowingly and with intent to defraud recruits, solicits, or hires a person outside the United States or causes another person to

4

> recruit, solicit, or hire a person outside the United States, or attempts to do so, for purposes of employment in the United States by means of materially false or fraudulent pretenses, representations or promises regarding that employment shall be fined under this title or imprisoned for not more than 5 years, or both.

To specify a predicate act of fraud, whether wire, mail, or in foreign labor contracting, plaintiffs must meet the heightened standard of Rule 9(b). *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). Rule 9(b) requires that a plaintiff must specify time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained as a result. *Id*. at 1139.

## Analysis

Plaintiffs make the following factual allegations in support of their RICO claims in their proposed second amended complaint and their Local Rule 83.8 RICO statement (*See* [Doc. 35] at 34):

The five Plaintiffs are United States citizens alleged to be, or have been, at various times between 2018 and 2025 employees of the Defendant farmer who perform(ed) farm labor for him for an hourly wage of $10.00. The complaint asserts that each year, the Defendant also employed South African foreign farm laborers pursuant to 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188 (a)(1), which allow an employer in the United States to hire foreign workers to perform agricultural labor of a seasonal or temporary nature only if the U.S. Department of Labor ("DOL") certifies that there are insufficient available workers within the U.S. to perform the job and that the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. Foreign workers admitted in this fashion are commonly referred to as "H-2A workers." Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with the DOL. 20 C.F.R. § 655.130. This application

5

must include a job offer, commonly referred to as a "job order," complying with applicable regulations.

Among the specific terms required by the H-2A regulations are the following: The employer will pay all workers performing the activities described in the petition or otherwise performed by the H-2A workers at least the applicable Adverse Effect Wage Rate ("AEWR") for every hour or portion worked during a pay period, 20 C.F.R. §§ 655.120(a), 655.122(l); the wages and job benefits provided to the employer's H-2A workers must also be extended to similarly employed U.S. workers. 20 C.F.R. §§ 655.0(a)(3) and 655.122(a). According to Plaintiffs, the Mississippi AEWR began at $10.73 in 2018 and rose each year to $14.83 in 2025.

Plaintiffs allege Defendant, from 2018 to 2025, committed mail fraud, wire fraud, and foreign contracting fraud by annually falsely representing to the U.S. government that he had contacted all of his former U.S. employees by phone or e-mail and that none of them were available to help fill the manpower requirements of his job order, and that he would pay at least the AEWR to his H-2A workers and U.S. workers in corresponding employment. Plaintiffs assert that Defendant, instead, never paid them AEWR wages or offered them job opportunities that were at least equal to those he provided to his H-2A employees. Plaintiffs assert that as a direct and proximate result of Gregory Carr's racketeering activities, they suffered injury to their business and property, including the loss of job opportunities and the loss of wages to which they would have been entitled as "corresponding workers" to the H-2A workers.

In opposition to the motion to amend [Doc. 42], Defendant argues that none of the three predicate acts—mail fraud, wire fraud and foreign contracting fraud—identified by Plaintiffs in support of their RICO claim are adequate grounds, and in any event, the alleged predicate acts did not proximately cause their claimed losses. As concerns the alleged foreign contracting fraud claim

6

under 18 U.S.C. § 1351, Defendant argues that foreign contracting fraud cannot serve as an adequate predicate offense for Plaintiffs' RICO claim because foreign contracting fraud involves misrepresentations to the foreign worker—not to the U.S. government or to the Plaintiffs. In response [Doc. 46], Plaintiffs recite that they disagree, but they do not provide any caselaw to support their position, and the Court is aware of none.

As concerns the mail and wire fraud predicates, Defendant asserts that they are merely relabeled futile foreign contracting fraud claims. I, however, am unconvinced. I find the two cases relied on by Defendant for that proposition to be easily distinguishable.[3] Moreover, the proposed second amended complaint asserts with some specificity the fraudulent statements allegedly made by mail and wire, provides dates they were allegedly made, as well as who made them.

On the other hand, of significant concern to the Court is Plaintiffs' obligation to assert sufficient facts from which it may be plausibly shown that the RICO predicate offense(s) "was the proximate cause" of the five Plaintiffs' alleged injuries (lower wages than the foreign workers received and fewer hours). The RICO plaintiff must state "that a RICO predicate offense 'not only was a 'but for' cause of injury, but was the proximate cause as well.'" *Hemi Grp., LLC*, 559 U.S. at 9 (citing *Holmes*, 503 U.S. at 268).

As refenced above, in the RICO context, proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. Facts plausibly alleging proximate cause in a RICO action must be specifically pled to survive a Rule

---

[3] In *Arroyo v. Oprona, Inc.*, 2017 U.S. Dist. LEXIS 143071, *6-*7 (S.D. Tex. 2017), the court found that a plaintiff's characterization of alleged acts of tax evasion (making a false statement on a tax return, and conspiracy to defraud the United States), did not constitute predicate wire and mail fraud offenses under the RICO statute, but were instead "merely relabeling tax fraud which" did not "work" as predicate offenses under RICO); and, in *Carmen v. Health Carousel, LLC*, 2023 U.S. Dist. LEXIS 139403 (S.D. Ohio 2023), the putative immigrant class members were employed by Health Carousel, a recruiting and staffing company, who enlisted foreign nurses, primarily from the Philippines, to work in healthcare facilities across the United States. Neither case involved domestic farm laborers who allege a RICO claim based on predicate acts of mail and wire fraud.

12(b)(6) motion. *See, e.g., Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) (reviewing allegations in support of proximate cause at motion to dismiss stage in RICO case); *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018) (assessing proximate cause on review of motion to dismiss RICO action). Furthermore, unlike the generic definition of proximate cause at common law, Supreme Court precedent makes "clear that in the RICO context, the focus [of proximate causation] is on the directness of the relationship between the conduct and the harm" rather than "the concept of foreseeability." *Hemi Grp., LLC,* 559 U.S. at 12. "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result—generally at 'the first step' in the chain of causation." *Slay's Restoration, LLC*, 884 F.3d at 94.

The Supreme Court has articulated three judicially practicable reasons for requiring directness of injury. First, "indirect injuries make it difficult 'to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors.'" *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 642 (3d Cir. 2015) (quoting *Holmes*, 503 U.S. at 269). Second, and relatedly, indirect injuries risk double recovery so the "courts would have to adopt complicated rules apportioning damages to guard against this risk." *Id.* Third, directly injured victims can be counted on and are best positioned to "vindicate the law as private attorneys general," so there is no need to extend civil RICO's private right of action to those whose injuries are more remote. *Holmes*, 503 U.S. at 269–70; *see, e.g.*, *In re Avandia Mktg.*, 804 F.3d at 642 (discussing how damages are often difficult to ascertain when the harms are indirect because other, independent factors may have contributed to the injury).

In this case, the only argument offered by Plaintiffs to satisfy the proximate cause direct injury standard is the assertion that "Plaintiffs discreetly alleged in the second amended complaint

8

and the RICO Statement the pattern of racketeering activity directly led to Plaintiffs being offered fewer hours of work and paid a lower hourly wage." [Doc. 36] at 5. Even reviewing the proposed second amended complaint and RICO statement in the light most favorable to Plaintiffs, the Court finds the conclusory legal assertions insufficient to establish facts from which proximate cause can be plausibly inferred.

Assume for the sake of argument that Defendant's temporary labor certification application contained no alleged false statements (it recited that no previous employees had been offered the H-2A jobs and that the H-2A workers would not receive higher wages than corresponding domestic laborers.) That would *not* have directly resulted in Plaintiffs being offered higher wages or hours to match those of H-2A workers. True, it may have resulted in the Defendant not being allowed to hire as many, or any, H-2A workers for that matter, but in no event would it appear to directly *cause* these five plaintiffs to receive higher wages or hours.

Conversely, the fact that the Defendant is alleged to have falsely claimed that his former workers were called and would be paid as corresponding employees the AEWR wages did not *proximately cause* them not to have been called or paid the same rate as H-2A workers. Simply put, the proffered causation theory does not plausibly allege a direct relationship between the fraud (false statements on the application) and the alleged injury (higher wages and hours for H-2A workers), as it is simply too remote. The RICO claim cannot survive because there is "no direct relationship between the lie and the injury." *Shannon v. Ham*, 639 F. App'x 1001, 1003 (5th Cir. 2016).

9

**Conclusion**

In conclusion, I find that motion the proposed second amended complaint is due to be denied due to the failure of the five named Plaintiffs to state adequate facts to give rise to a valid RICO claim.[4] Accordingly, Plaintiffs' motion to amend shall be and is hereby DENIED.

**SO ORDERED** this, the 13th day of January, 2026.

/s/Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**

---

[4] This would include a conspiracy claim as well. *See GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001). Plaintiffs' RICO conspiracy claim is tethered to the substantive RICO violations they allege. Having found those alleged substantive violations meritless, the Court is constrained to dismiss the RICO conspiracy claims as well.